734 So.2d 1009 (1999)
Robert Allan TEFFETELLER, Petitioner,
v.
Richard L. DUGGER, etc., Respondent.
Robert Allan Teffeteller, Appellant,
v.
State of Florida, Appellee.
Nos. 73,241, 77,646 and 89,120.
Supreme Court of Florida.
March 4, 1999.
Rehearing Denied June 17, 1999.
*1013 John W. Moser, Capital Collateral Regional Counsel-Middle Region, and James H. Walsh, Assistant Capital Collateral Regional Counsel-Middle Region, Tampa, Florida; and Martin J. McClain, Chief Assistant CCRC, Stephen M. Kissinger and Judith Dougherty, Assistant CCRC, and Deborah K. Nimmons, Staff Attorney, Tallahassee, Florida, and Terri L. Backhus, Special Assistant CCRC, Tampa, Florida, for Petitioner/Appellant.
Robert A. Butterworth, Attorney General, and Richard B. Martell, Tallahassee, Florida, Kenneth S. Nunnelley, Barbara C. Davis and Margene A. Roper, Daytona Beach, Florida, Assistant Attorneys General, for Respondent/Appellee.
PER CURIAM.
Robert Allan Teffeteller, a prisoner under sentence of death, appeals the trial court's order denying his Florida Rule of Criminal Procedure 3.850 motion for post-conviction relief. Teffeteller also petitions this Court for a writ of habeas corpus. We have jurisdiction pursuant to article V, section 3(b)(1) and (9) of the Florida Constitution. For the reasons explained below, we affirm the trial court's denial of postconviction relief and we deny relief under the habeas petition.
Teffeteller was convicted of first-degree murder and sentenced to death. On appeal, this Court affirmed his conviction but vacated the death sentence and remanded for a resentencing before a jury because of improper and prejudicial prosecutorial comments. See Teffeteller v. State, 439 So.2d 840 (Fla.1983). Following the jury's recommendation, the judge sentenced Teffeteller to death. On appeal, this Court affirmed the death sentence. See Teffeteller v. State, 495 So.2d 744 (Fla.1986).
Teffeteller filed a 3.850 motion, which the trial court denied without evidentiary hearing. He then filed a motion for rehearing alleging a newly discovered "Howard Pearl" issue. Pearl had served as a special deputy sheriff in Marion County during the time that he was Teffeteller's defense counsel at his original trial. Teffeteller claimed that this constituted a conflict of interest. The circuit court denied the motion for rehearing without an evidentiary hearing and denied the Pearl issue based upon this Court's decision in Harich v. State, 573 So.2d 303 (Fla.1990).[1]
*1014 In April 1992, this Court ordered the chief judge of the Seventh Judicial Circuit to consolidate all cases in which the Pearl conflict claim was raised. Teffeteller's Pearl claim was consolidated with those of eight other appellants. Teffeteller's appeal of the trial court's denial of his 3.850 motion and his petition for habeas corpus relief were held in abeyance pending resolution of the Pearl issue.
After an evidentiary hearing, the trial court issued an order finding that Pearl's special deputy sheriff status did not conflict with his duties as an assistant public defender. Teffeteller, along with the consolidated appellants, appealed the trial court's denial of relief on this claim. This Court determined that the proceeding below was procedurally flawed and violated the appellants' right to due process. See Teffeteller v. Dugger, 676 So.2d 369, 371 (Fla.1996). We vacated the trial court's order denying relief and remanded for individual hearings within six months of the Court's opinion. Id. The Court also stated that the appellants were entitled to an evidentiary hearing of those claims "which raise ineffective assistance of trial counsel that `are not conclusively rebutted by the record and which demonstrate a deficiency in performance that prejudiced the defendant.'" Id. (quoting Roberts v. State, 568 So.2d 1255, 1259 (Fla.1990)). We declined to rule on Teffeteller's pending habeas petition in light of the disposition of his 3.850 appeal. Id.
After this Court's opinion was issued, Teffeteller moved to dismiss his appellate counsel. This Court granted the motion and ordered the circuit court to conduct a Faretta[2] hearing. During that hearing, Teffeteller explained that he did not want to represent himself, but instead wanted to be represented by counsel other than the Office of Capital Collateral Representative (CCR).[3] The trial court explained that Teffeteller's choices were limited to accepting CCR counsel, finding his own private counsel, or proceeding pro se. Teffeteller decided to accept CCR counsel.
A hearing was held on September 9-10, 1996, to determine whether Teffeteller's trial counsel, Howard Pearl, had a conflict of interest or provided ineffective assistance as a result of his status as a special deputy sheriff. The hearing was limited to the Pearl issue. Teffeteller introduced the testimony of four witnesses: the records custodian for the Marion County Sheriffs Department; the former Marion County Sheriff; the Volusia County Sheriff; and Howard Pearl. At the end of the hearing, the judge requested memoranda from the parties within thirty days as to any remaining claims. On September 18, 1996, the judge issued an order denying Teffeteller relief as to the Pearl issue. Teffeteller's counsel filed a motion for an extension of time in which to file a memorandum as to the remaining issues; that motion was subsequently denied. Teffeteller's counsel never filed a memorandum of law and on October 8, 1996, filed a notice of appeal. However, Teffeteller filed several pro se motions, claiming that the September hearing was invalid because he was not represented by conflict-free counsel, that pursuant to this Court's opinion he was entitled to an evidentiary hearing as to numerous other claims, and that the circuit court had improperly severed the Pearl claim from his other claims and limited the evidentiary hearing to only the Pearl claim. The State filed a memorandum in response, claiming that, unlike the other appellants that were involved in the Pearl issue, Teffeteller had no remaining outstanding rule 3.850 claims to be decided *1015 and that his claims either were procedurally barred, failed to properly demonstrate ineffective assistance of counsel, or were refuted by the record. On January 8, 1997, the judge issued an order denying Teffeteller's pro se motion for rehearing.
Teffeteller now appeals the trial court's denial of his motion for postconviction relief. We have also reopened Case No. 77,646 to consider Teffeteller's appeal of the denial of the non-Pearl issues raised in his original rule 3.850 motion.[4] We also consider Teffeteller's petition to this Court for a writ of habeas corpus. Both the appeal of the original rule 3.850 motion and the habeas petition were held in abeyance pending resolution of the Pearl issue.

Rule 3.850 Appeal
Teffeteller raises twenty-one issues relating to the trial court's denial of his rule 3.850 motion. Teffeteller claims that: (1) the trial court erred in summarily denying his rule 3.850 motion without an evidentiary hearing and without attaching portions of the record that conclusively establish that no relief was warranted; (2) trial counsel Howard Pearl's status as a special deputy sheriff constituted an undisclosed conflict of interest; (3) counsel was ineffective during the guilt phase proceedings; (4) Teffeteller was denied the right to dismiss counsel; (5) counsel was ineffective during the penalty phase proceedings; (6) Teffeteller was denied effective and adequate mental health assistance due to counsel's ineffectiveness; (7) counsel was ineffective for failing to timely seek disqualification of Judge Foxman; (8) Teffeteller's statements that were admitted at trial were obtained in violation of his right to remain silent and right to counsel; (9) he was illegally seized and transported to Florida without compliance with the Uniform Extradition Act and counsel's failure to fully litigate this issue was deficient performance; (10) Georgia law enforcement personnel seized and searched his car without an arrest warrant and counsel failed to effectively litigate this claim; (11) the felony murder instruction was constitutionally deficient; (12) the prosecutor made improper comments during the trial and closing arguments in both the guilt and penalty phase proceedings and counsel's failure to address these comments was ineffective assistance; (13) the prosecutor made improper comments during the hearing and during penalty phase closing arguments and counsel's failure to address these comments was ineffective assistance; (14) the prosecutor introduced nonstatutory aggravating factors and counsel's failure to object, argue, or rebut these factors was ineffective assistance; (15) instruction and argument on aggravating circumstances that the crime was committed during a robbery and for pecuniary gain constituted doubling and counsel was ineffective for failing to object; (16) Teffeteller's death sentence rests upon the automatic aggravating circumstance of "in the course of a felony"; (17) his death sentence constitutes cruel and unusual punishment under Enmund[5] and Tison[6]; (18) the sentencing court refused to find mitigating circumstances that were set forth in the record; (19) the jury instruction shifted the burden to Teffeteller to establish that the mitigating circumstances outweighed the aggravating circumstances, the prosecutor argued that Teffeteller was required to produce evidence and prove mitigating circumstances, and counsel was ineffective for failing to object; (20) the jury instructions and *1016 prosecutor arguments diluted the jurors' sense of responsibility for sentencing in violation of Caldwell[7] and counsel was ineffective for failing to object; and (21) at the resentencing, the jury was improperly presented with evidence of crimes committed after the instant homicide and counsel was ineffective for failing to object.
In his first claim, Teffeteller contends that the trial court erred in denying his motion for postconviction relief without an evidentiary hearing. A motion for postconviction relief can be denied without a hearing when the motion and the record conclusively demonstrate that the movant is entitled to no relief. See Roberts v. State, 568 So.2d 1255, 1256 (Fla.1990). The substantive claims raised by Teffeteller are procedurally barred because they either could have been raised on direct appeal[8] or were raised on direct appeal and found to be without merit.[9]See Smith v. State, 445 So.2d 323, 325 (Fla.1983) ("Issues which either were or could have been litigated at trial and upon direct appeal are not cognizable through collateral attack."); Torres-Arboleda v. Dugger, 636 So.2d 1321, 1323 (Fla.1994) ("Proceedings under rule 3.850 are not to be used as a second appeal; nor is it appropriate to use a different argument to relitigate the same issue."). A claim of ineffective assistance of counsel will warrant an evidentiary hearing only where the defendant alleges specific facts which are not conclusively rebutted by the record and which demonstrate a deficiency in performance that prejudiced the defendant. See Mendyk v. State, 592 So.2d 1076, 1079 (Fla.1992), receded from on different grounds by Hoffman v. State, 613 So.2d 405, 406 (Fla. 1992); Roberts, 568 So.2d at 1259.
While the judge did not conduct an evidentiary hearing in the instant case, he did conduct a lengthy hearing at which both sides were allowed to present argument as to the twenty-nine issues raised in Teffeteller's motion to vacate. After hearing argument and reviewing all of the claims raised, the judge stated his rationale for denying relief, based on the record. He found one claim to be moot and the rest of the substantive claims to be procedurally barred because they either had "already been litigated or could and should have been litigated at trial and/or direct appeal." As to the claims of ineffective assistance of counsel, the judge found them to be either insufficiently pled or insufficient as a matter of law for failing to adequately demonstrate deficiency or prejudice. We agree with the judge's conclusion that an evidentiary hearing was not warranted here.
We remanded Teffeteller's case for an evidentiary hearing on his second claim regarding the alleged conflict of interest by trial counsel Howard Pearl. See Teffeteller, 676 So.2d at 371. We also stated that Teffeteller was entitled to an evidentiary hearing on the claims of ineffective assistance of counsel that "are not conclusively rebutted by the record and which demonstrate a deficiency in performance that prejudiced the defendant." Id. (quoting Roberts, 568 So.2d at 1259). The judge conducted an evidentiary hearing limited to the Pearl claim. However, at the end of that hearing, the judge requested memoranda from the parties within thirty days as to any remaining claims. Teffeteller's *1017 counsel never filed a memorandum of law as to those claims, and instead filed a notice of appeal with this Court. We find no error in limiting the scope of the evidentiary hearing in this manner.
After the hearing, the court denied relief on the Pearl claim. In the order denying relief, the court made a number of factual findings regarding Pearl's status as a special deputy sheriff, including that he "never was and never has been a law enforcement officer with the Marion County Sheriff's Department," that he "was essentially granted a concealed weapons permit" as were many other individuals, and that he "had no apparent or actual authority to act as a law enforcement officer" for the sheriff's department. Teffeteller also claimed that Pearl had acted on behalf of a conflicted interest by arming himself during Teffeteller's trial when informed by a bailiff of a rumor that Teffeteller might take Pearl hostage in an attempt to escape during the proceeding. In denying the claim, the court found that Pearl "neither guarded nor helped to prevent an escape by the Defendant during his trial" and had only armed himself "in response to a perceived threat to his person." Based upon these factual findings and pertinent case law, the court concluded that neither a per se nor an actual conflict of interest existed between Pearl and Teffeteller and denied relief on this basis.
Our review of the record reveals competent, substantial evidence to support the judge's factual findings that Pearl was not a law enforcement officer even though he was a "special deputy sheriff" and that he never acted in a law enforcement capacity during Teffeteller's trial. See Philip J. Padovano, Florida Appellate Practice, § 9.6, at 155 (2d ed. 1997) ("The standard of review applicable to a trial court decision based on a finding of fact is whether the decision is supported by competent substantial evidence."). Based upon these factual findings and the pertinent case law, we agree with the judge's legal conclusion that neither per se nor actual conflict existed between Teffeteller and his attorney. See Cuyler v. Sullivan, 446 U.S. 335, 350, 100 S.Ct. 1708, 64 L.Ed.2d 333 (1980) (stating that in order to prevail on a conflict of interest claim, "a defendant must establish that an actual conflict of interest adversely affected his lawyer's performance"); Buenoano v. Dugger, 559 So.2d 1116, 1120 (Fla.1990). Thus, there is no merit to this claim.
Teffeteller asserts that he was denied the right to dismiss trial counsel (claim 4). We find no merit to the claim as the record shows that Teffeteller abandoned his request to dismiss trial counsel. Teffeteller filed a pro se motion to dismiss counsel and to have counsel other than the public defender's office appointed, based upon the following grounds: conflict with counsel about whether to call a specific defense witness; lack of time for counsel to prepare due to a heavy caseload; and the inability of the public defender's office to file a collateral attack on his Texas conviction. During the hearing on Teffeteller's pro se motion, it was explained that Teffeteller could either allow counsel to make decisions after consulting with him or that Teffeteller could represent himself. Teffeteller made it clear that he did not want to represent himself and accepted Pearl as his attorney.
Claims 8-10 involve issues raised by Teffeteller in his original direct appeal. Teffeteller claimed that his statements to law enforcement officers should not have been admitted at trial because they were not voluntary and the law enforcement officers did not comply with the requirements of the Uniform Extradition Act (Point 5 on direct appeal). He further argued that evidence seized from his car following a search should have been suppressed (Point 8 on direct appeal). This Court found no merit to these claims. See Teffeteller, 439 So.2d at 842 ("[T]he [other issues raised on appeal] have been carefully considered by this Court and held to be meritless."). Teffeteller claims that recent *1018 case law shows that this Court erred in its analysis. However, we find no subsequent change in the law that is relevant to our ruling and therefore the procedural bar remains in place. See Van Poyck v. State, 694 So.2d 686, 698-99 n. 6 (Fla.), cert. denied, ___ U.S. ___, 118 S.Ct. 559, 139 L.Ed.2d 400 (1997). To the extent that Teffeteller raises new grounds for the suppression of his statements and the evidence, these issues are also procedurally barred. Using a different argument to relitigate such a claim is inappropriate. See Quince v. State, 477 So.2d 535, 536 (Fla.1985).
Claim 11 regarding the adequacy of the felony murder instruction was also raised on direct appeal (Point 3) and specifically rejected by this Court because we found "substantial, competent evidence to uphold [Teffeteller's] conviction under a premeditation theory" which rendered any "alleged inadequacies in the underlying felony instructions ... moot." Teffeteller, 439 So.2d at 844. In a footnote, we further explained that "the elements of the underlying felony in a felony murder need not be as particularized as the instructions required when the felony is the primary charge." Id. at 844 n. 1. Contrary to Teffeteller's assertions, new law does not support his claim that this Court erred in its analysis. A general verdict need not be reversed "where the general verdict could have rested upon a theory of liability without adequate evidentiary support when there was an alternative theory of guilt for which the evidence was sufficient." Mungin v. State, 689 So.2d 1026, 1030 (Fla. 1995) (citing Griffin v. United States, 502 U.S. 46, 112 S.Ct. 466, 116 L.Ed.2d 371 (1991)). In Teffeteller's original appeal, we noted that "[t]here is evidence in the record that could have been believed by the jury that proves beyond a reasonable doubt that [Teffeteller] was indeed the triggerman in this murder and that [he] acted from a premeditated design to effect the death of [the victim]." 439 So.2d at 844. Moreover, the jury found Teffeteller guilty of first-degree murder "as charged in Count I of the Indictment." (Emphasis added.). Count I charged Teffeteller with first-degree murder based on "a premeditated design to effect the death of [the victim]." Thus, Teffeteller is not entitled to relief on this claim.
Additionally, our original resolution of this felony murder issue also forecloses relief under claim 17 (death sentence constituted cruel and unusual punishment under Enmund-Tison). In Enmund, the United States Supreme Court held that the Eighth Amendment of the United States Constitution does not permit imposition of the death penalty on a defendant "who aids and abets a felony in the course of which a murder is committed by others but who does not himself kill, attempt to kill, or intend that a killing take place or that lethal force will be employed." 458 U.S. at 797, 102 S.Ct. 3368. In Tison, the Supreme Court expanded the Enmund culpability requirement for imposing a death sentence under a felony murder theory to include "major participation in the felony committed, combined with reckless indifference to human life." 481 U.S. at 158, 107 S.Ct. 1676. In Teffeteller's original appeal, we concluded that "there is substantial, competent evidence to uphold [Teffeteller's] conviction under a premeditation theory." Teffeteller, 439 So.2d at 844. Thus, Enmund-Tison is not applicable and relief is not warranted on this basis.
The remaining claims allege that Teffeteller was denied effective assistance of counsel based upon deficient performance of trial counsel. In order to prevail on a claim of ineffective assistance of counsel, a defendant must demonstrate that (1) counsel's performance was deficient and (2) there is a reasonable probability that the outcome of the proceeding would have been different. See Strickland v. Washington, 466 U.S. 668, 687, 694, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984).
*1019 In claim 3, Teffeteller alleges that counsel rendered ineffective assistance during the guilt phase for failing to: timely file a motion to recuse the trial judge; present evidence of monetary rewards to State witnesses; investigate and present the circumstances of Teffeteller's arrest in Georgia; adequately litigate the extradition issue; adequately litigate the suppression issues; object to prosecutorial misconduct; object to the introduction of evidence of the victim's character; impeach State witnesses regarding rewards; present evidence that Teffeteller's companion shot the victim; and complain that the taped statement introduced evidence of Teffeteller's Georgia arrest and statement in contravention of a stipulation by the State. This claim encompasses the allegations of ineffective assistance raised in claims 7-10, as well as alleging other instances of ineffective assistance during the guilt phase of the trial. We address the issues in claims 7-10 first.
On appeal after resentencing, Teffeteller argued that the trial court erred in denying his motion to disqualify the judge (Point 1 on appeal after resentencing). Teffeteller sought to have Judge S. James Foxman disqualified from the resentencing proceeding and to have a special prosecutor appointed because the Volusia County Bar Association offered a reward for the capture and conviction of the individuals who killed the victim and both the judge and the prosecutor were members of that organization. Judge Foxman denied the motion as untimely because the bar association offered the reward in January 1979 but Teffeteller did not move to disqualify the judge until December 1984, less than one month before his resentencing was scheduled.[10] On appeal, this Court affirmed Teffeteller's death sentence without discussion of this issue. See Teffeteller, 495 So.2d at 745 ("Our review of the record indicates that only two of these issues warrant discussion."). Teffeteller now claims that counsel was ineffective in not timely seeking to disqualify the judge (claim 7).
We find no merit to this claim. While the judge denied the motion to disqualify as untimely, he also stated that even had the motion been timely made he would find the grounds stated to be legally insufficient. A motion to disqualify will be dismissed as legally insufficient if it fails to establish a well-grounded fear on the part of the movant that he or she will not receive a fair hearing. See Correll v. State, 698 So.2d 522, 524 (Fla.1997). We agree with the judge below that merely alleging membership in a large bar association that offered a reward was not a legally sufficient basis for disqualifying the judge. Thus, counsel cannot be deemed ineffective for not timely filing a motion that Teffeteller could not prevail upon.
Claims 8-10 allege that trial counsel failed to adequately litigate the admission of Teffeteller's statements to the police, the admission of evidence seized during a search of his automobile, and compliance with the extradition requirements. We considered each of these issues on direct appeal and found them to be without merit. See Teffeteller, 439 So.2d at 842. As to the claims of ineffective assistance of counsel, Teffeteller cannot satisfy the Strickland prejudice prong in light of our determination that the merits of the issues did not even warrant discussion. In addition, we note that trial counsel filed several motions to suppress Teffeteller's statements and the evidence obtained from the search of his vehicle on *1020 these very grounds,[11] that a hearing was conducted on the motions,[12] and that counsel objected to the introduction of the evidence at trial. Thus, trial counsel vigorously litigated these issues and his performance was not deficient in this regard. Teffeteller's real claim appears to be that counsel did not prevail on the motions to suppress. This does not constitute ineffective assistance. Counsel cannot be deemed ineffective for failing to prevail on a meritless issue.
The remaining allegations of ineffective assistance in claim 3 are either without merit or insufficient in that Teffeteller does not specifically state the nature of the deficient performance or how it prejudiced him. Thus, he is not entitled to relief on this basis. See Strickland. Moreover, to the extent that Teffeteller's allegations may have been more specific in his motion to vacate, the issue is not properly raised by referring to the argument in that motion. See Duest v. Dugger, 555 So.2d 849, 851-52 (Fla.1990).
In claim 5, Teffeteller alleges that counsel rendered ineffective assistance during the penalty phase for failing to: conduct an adequate voir dire; properly investigate mitigating circumstances; know the record of the previous proceeding and challenge the State's claims about Teffeteller's level of culpability; and timely seek disqualification of the judge. Teffeteller also recites a litany of other alleged errors and omissions by counsel during the penalty phase, too numerous to list in detail here. As explained below, we find no merit to these claims.
Teffeteller alleges that counsel did not adequately question the prospective jurors about their knowledge of the case, especially any knowledge of the previous death sentence imposed. Teffeteller's resentencing proceeding occurred over four years after his first trial and six years after the victim was killed. "The mere fact that jurors were exposed to pretrial publicity is not enough to raise the presumption of unfairness." Castro v. State, 644 So.2d 987, 990 (Fla.1994). The relevant inquiry is whether the jurors can lay aside any opinion or impressions and render a verdict based on the evidence presented in court. Id. The voir dire record in this case indicates that the judge questioned the prospective jurors about pretrial publicity and their knowledge of the case. Those who expressed even the slightest knowledge of the case were further questioned to determine whether they could disregard this information and render an impartial verdict based solely on the evidence at the resentencing proceeding. Any juror who expressed any predisposition toward the case was excused for cause. This procedure meets the steps which should be taken when there is a claim of jury exposure to media coverage. See Derrick v. State, 581 So.2d 31, 35 (Fla.1991). The prosecutor also questioned the prospective jurors about their exposure to news reporting. In light of this questioning of the prospective jurors, we cannot fault trial counsel for failing to repeat the questioning. Thus, Teffeteller has failed to prove deficient performance in this regard. Moreover, in light of the procedure followed by the court, even if *1021 counsel was remiss in not asking additional questions during voir dire, it resulted in no prejudice to Teffeteller and no relief is warranted on this basis.
Teffeteller also contends that trial counsel failed to adequately investigate his background to discover evidence that would establish statutory and nonstatutory mitigating circumstances, that he was dominated by his accomplice to the murder and that he had a personality disorder. Trial counsel presented testimony from the mental health expert who evaluated Teffeteller, several corrections officers, the prison minister who visited Teffeteller weekly, and Teffeteller himself. Much of the "mitigating" evidence that Teffeteller faults counsel for not presenting is cumulative to that presented by the mental health expert and Teffeteller during the resentencing proceeding.[13]See Routly v. State, 590 So.2d 397, 401 (Fla.1991) (finding that defendant did not demonstrate reasonable probability that sentence would have been different had trial counsel presented proffered mitigating evidence where much of the evidence was already before the judge and jury in a different form). Moreover, under the "`highly deferential'" judicial scrutiny that must be afforded counsel's performance, we find that "`counsel's conduct [here] falls within the wide range of reasonable professional assistance.'" Mills v. State, 603 So.2d 482, 485 (Fla. 1992) (quoting Strickland, 466 U.S. at 689, 104 S.Ct. 2052). Thus, no relief is warranted on this basis.
Teffeteller claims that trial counsel was not familiar with the record of the previous proceeding and thus failed to object to various arguments regarding the guilt phase verdict and Teffeteller's level of culpability in the murder. Specifically, Teffeteller contends that counsel should have objected to any statement by the State that he had been convicted of premeditated murder in the first proceeding or that he was the triggerman. He argues that counsel's failure in this regard resulted in the jury not being able to fairly assess his level of culpability. We find no merit to this issue. In sustaining Teffeteller's conviction for first-degree murder, this Court noted that there was "evidence in record that could have been believed by the jury that proves beyond a reasonable doubt that [Teffeteller] was indeed the triggerman in this murder and that [he] acted from a premeditated design to effect the death of [the victim]." Teffeteller, 439 So.2d at 844. We also stated that there was "sufficient evidence to support a conviction for premeditated murder." Id. at 846. In fact, the jury convicted Teffeteller of first-degree murder "as charged" in count I of the indictment (first-degree murder "from a premeditated design to effect the death of a human being") and count IV (the "use of a firearm while in the commission of a felony"). Thus, there was nothing improper in the State's argument that Teffeteller was convicted of premeditated murder and trial counsel cannot be deficient for not objecting to this proper statement.
As to the remaining allegations of ineffective assistance in claim 5, Teffeteller has not shown deficient performance by counsel that prejudiced him as required by Strickland.
Teffeteller contends that he was denied an effective and adequate mental health evaluation because counsel failed to provide the necessary background information to the mental health expert (claim 6). In denying this claim below, the trial *1022 court found that "the alleged inadequacy in the defendant's mental health examination was in fact attributable to the defendant himself and his refusal to be candid vis-a-vis the murder during the examination. No deficiency in the mental health examination or the representation of counsel vis-a-vis that examination has been adequately alleged or demonstrated." The record shows that a mental health expert interviewed Teffeteller for several hours and administered a battery of psychological tests. He also reviewed transcripts of Teffeteller's previous trials and his incarceration record. The expert opined that Teffeteller suffered from an antisocial personality disorder and that he was nonassertive and easily influenced by others. He testified that Teffeteller had been a substance abuser from an early age. He also testified that while Teffeteller was in the Air Force he had difficulties with his superiors, was involved in a drug-related incident, and was discharged prematurely. The expert stated that he was unable to offer an opinion regarding mitigating circumstances because Teffeteller denied his involvement in the crime and would not discuss it with him.
In his appeal to this Court, Teffeteller fails to allege what specific information was available but not known by the mental health expert that would have led the expert to conclude that there were "significant competency and mental health mitigation issues." Teffeteller merely asserts that the proper assessment steps were not followed and that a "plethora of mitigating circumstances" were available but not presented for the expert's evaluation. We agree with the trial court that Teffeteller did not state sufficient allegations or demonstrate prejudice and therefore was conclusively entitled to no relief in connection with this claim.[14]
Claims 12 and 13 allege that the prosecutor made a number of improper comments during both the guilt[15] and penalty phase proceedings[16] and that counsel was ineffective in failing to raise proper *1023 objection to these comments. As noted above, the substantive claims are procedurally barred as they either should have been raised on direct appeal or were raised and found to be without merit.[17] Furthermore, allegations of ineffective assistance of counsel cannot be used to circumvent the rule that postconviction proceedings cannot serve as a second appeal. See Medina, 573 So.2d at 295. When viewed in context, we find nothing improper in the comments and conduct challenged by Teffeteller. Trial counsel cannot be deemed ineffective for failing to raise meritless claims or claims that had no reasonable probability of affecting the outcome of the proceeding. See Strickland.
Teffeteller claims that trial counsel rendered ineffective assistance for failing to object to the issues raised in claims 14 (introduction of nonstatutory factors), 15 (instruction and argument on robbery and pecuniary gain aggravating factors constituted doubling), 19 (burden-shifting instruction), and 20 (Caldwell violation). However, Teffeteller has failed to show deficient performance or prejudice arising therefrom, as required by Strickland.
Teffeteller maintains that counsel's failure to object to or rebut testimony introduced during the penalty phase or object to various comments made by the prosecutor during closing argument resulted in a death sentence predicated upon nonstatutory aggravating factors (claim 14). Most of the alleged nonstatutory aggravators involve the circumstances of the murder for which Teffeteller was being sentenced. As we explained when Teffeteller appealed his death sentence after the resentencing proceeding,
One of the problems inherent in holding a resentencing proceeding is that the jury is required to render an advisory sentence of life or death without the benefit of having heard and seen all of the evidence presented during the guilt determination phase....
We note that this evidence [is] not used to relitigate the issue of appellant's guilt, but [is] used only to familiarize the jury with the underlying facts of the case....We hold that it is within the sound discretion of the trial court during resentencing proceedings to allow the jury to hear or see probative evidence which will aid it in understanding the facts of the case in order that it may render an appropriate advisory sentence. We cannot expect jurors impaneled for capital sentencing proceedings to make wise and reasonable decisions in a vacuum.
Teffeteller, 495 So.2d at 745. Thus, the circumstances surrounding the instant offense and Teffeteller's statements regarding his involvement were properly admitted, and counsel cannot be deemed ineffective for failing to object.
Teffeteller also faults counsel for not objecting to other evidence and comments. However, we find that these other comments and evidence did not constitute nonstatutory aggravating factors and were properly introduced either to prove the aggravating circumstances or to rebut mitigating circumstance evidence introduced by the defense. Thus, counsel was not deficient in this regard. Moreover, to the extent that counsel should have objected to any of these comments or evidence, Teffeteller has not satisfied the Strickland prejudice prong. Thus, he is not entitled to relief on this claim.
In claim 15 Teffeteller contends that defense counsel should have objected to "doubling" when the jury was instructed on both the pecuniary gain and robbery aggravating factors. A trial court's finding of both of these aggravating factors constitutes improper doubling. See Provence v. State, 337 So.2d 783, 786 (Fla. 1976). However, "instructing the jury on *1024 both the murder during the course of a robbery and the pecuniary gain aggravating factors is not error." Derrick v. State, 641 So.2d 378, 380 (Fla.1994). As this Court explained in Suarez v. State, 481 So.2d 1201, 1209 (Fla.1985):
The jury instructions simply give the jurors a list of arguably relevant aggravating factors from which to choose in making their assessment as to whether death was the proper sentence in light of any mitigating factors presented in the case. The judge, on the other hand, must set out the factors he finds both in aggravation and in mitigation, and it is this sentencing order which is subject to review vis-a-vis doubling.
Thus, counsel was not deficient for failing to object to jury instructions on both aggravating factors.
In claim 19 Teffeteller asserts that counsel should have objected that the jury instructions and the prosecutor's closing argument shifted the burden to him to prove that the mitigating circumstances outweighed the aggravating circumstances. Counsel was not ineffective in this regard. When viewed as a whole, the instructions given by the court did not shift the burden of proof to the defendant. See Preston v. State, 531 So.2d 154, 160 (Fla.1988); Arango v. State, 411 So.2d 172, 174 (Fla.1982).
Even if the Caldwell issue in claim 20 had been properly preserved at trial and raised on appeal, we would find the issue to be without merit. The purported improper instructions and comments by the prosecutor were consistent with Florida's statutory scheme in which the jury "render[s] an advisory sentence to the court" and the trial court, "notwithstanding the recommendation of a majority of the jury," enters the sentence. § 921.141(2), (3), Fla. Stat. (1983); see also Combs v. State, 525 So.2d 853 (Fla.1988).
Finally, in claim 21, Teffeteller argues that the resentencing jury improperly heard evidence of his convictions for murder and aggravated assault that occurred subsequent to this crime and that trial counsel was ineffective for not challenging the introduction of this evidence. As explained above, the merits of this claim should have been raised on direct appeal after resentencing. Moreover, we find no merit to the claim that trial counsel was ineffective in this regard. We have previously explained that the statutory aggravating circumstance of "previously convicted of another capital felony or of a felony involving the use or threat of violence to the person" applies to any such crime for which there was a conviction at the time of sentencing. See King v. State, 390 So.2d 315, 320 (Fla.1980), receded from on other grounds by Strickland v. State, 437 So.2d 150 (Fla.1983); accord Craig v. State, 510 So.2d 857, 868 (Fla.1987). Thus, the evidence of Teffeteller's prior convictions was properly admitted at resentencing and counsel's performance was not deficient for failing to challenge the introduction of this evidence. In fact, in Teffeteller's initial direct appeal, this Court specifically stated that at resentencing the trial court could consider these convictions. Teffeteller, 439 So.2d at 847.

Habeas Corpus Petition
Teffeteller raises twenty-two issues in his petition for a writ of habeas corpus. In addition to the substantive claim, he also raises a claim of ineffective assistance of appellate counsel as to the following issues: (1) he was illegally seized in Georgia and transported to Florida in violation of the Uniform Extradition Act, which rendered the proceedings in Florida null and void or at least rendered the evidence obtained inadmissible; (2) Georgia law enforcement personnel seized and searched his car without a warrant for his arrest; (3) his oral statements to law enforcement officials were improperly admitted because they were obtained without adequate and accurate Miranda warnings; (4) his statements were also obtained in violation of his Sixth Amendment right to counsel; (5) the State intentionally circumvented his right to counsel; (6) the prosecutor made *1025 improper comments during the trial and during closing arguments in the guilt phase; (7) Teffeteller was denied his right to dismiss Pearl as his trial counsel and represent himself; (8) the felony murder instruction was constitutionally deficient; (9) the prosecutor made improper comments during the resentencing hearing and during closing arguments in the penalty phase; (10) the prosecutor introduced evidence of nonstatutory aggravating factors and argued these factors to the jury; (11) the "committed during the course of a felony" aggravating circumstance is an unconstitutional automatic aggravating circumstance; (12) the jury should not have been instructed on both the pecuniary gain and crime committed during the course of a robbery aggravating circumstances; (13) at the resentencing proceeding the jury was precluded from considering Teffeteller's non-triggerman status as a mitigating circumstance when the State informed the jury that it must accept as true that Teffeteller had been convicted of premeditated murder; (14) during voir dire examination and the penalty phase proceeding the prosecutor improperly told the jury that it could not consider sympathy for the defendant; (15) improper victim impact evidence was admitted at both the guilt and penalty phase proceedings; (16) the resentencing jury was improperly presented evidence of crimes committed after the homicide at issue here; (17) the prosecutor's comments diluted the jurors' sense of responsibility for sentencing; (18) the penalty phase jury instruction and the prosecutor's argument improperly shifted the burden to Teffeteller to establish that the mitigating circumstances outweighed the aggravating circumstances; (19) Teffeteller's death sentence is unconstitutional under Enmund-Tison; (20) the court refused to conduct individual voir dire to ascertain the extent of the jurors' knowledge about the case; (21) juror misconduct occurred during jury deliberations on resentencing when a juror argued that a life sentence was too costly, based upon a newspaper article that was not admitted into evidence; and (22) the jury improperly considered the cost of life imprisonment during penalty phase deliberations.
Most of the claims that Teffeteller raises are repetitive of the issues raised in his rule 3.850 motion. Additionally, the substantive claims are procedurally barred either because they were raised on direct appeal and rejected by this Court[18] or could have been raised on direct appeal.[19] "[H]abeas corpus petitions are not to be used for additional appeals on questions which could have been ... or were raised on appeal or in a rule 3.850 motion, or on matters that were not objected to at trial." Parker v. Dugger, 550 So.2d 459, 460 (Fla. 1989).
In claim 13, Teffeteller argues that the jury was precluded from considering his possible non-triggerman status as a nonstatutory mitigating circumstances in violation of Hitchcock.[20]Hitchcock requires an advisory jury and the sentencing judge to consider nonstatutory mitigating circumstances. See Hitchcock, 481 U.S. at 398-99, 107 S.Ct. 1821. Further, Hitchcock constituted a substantial change in the law so that such error could be raised for the first time in a postconviction proceeding even if otherwise procedurally barred.[21]See Thompson v. Dugger, 515 *1026 So.2d 173, 175 (Fla.1987). We find no merit to this claim. Although Hitchcock had not been decided when Teffeteller was sentenced, the record reflects that nonstatutory mitigation was properly considered by the jury and judge when it sentenced him to death. In closing argument, defense counsel reminded the jury that it could consider "any other aspect of [Teffeteller's] character or record or any other circumstance of the offense" as a mitigating circumstance. The judge gave this same instruction to the jury. When a trial judge instructs a jury that it can consider nonstatutory mitigating evidence, we must assume that the judge followed his own instructions to the jury. See Groover v. State, 640 So.2d 1077, 1078 (Fla.1994). Thus, Teffeteller is not entitled to relief on this claim.
Claim 19 is repetitive of the Enmund-Tison claim raised in Teffeteller's rule 3.850 motion for postconviction relief. This claim could and should have been raised on direct appeal. Moreover, the claim is meritless. As discussed above, this Court concluded that Teffeteller's conviction for first-degree murder could be sustained under both a felony murder theory and a premeditation theory. See Teffeteller, 439 So.2d at 844. Thus, the trial court was not required to make Enmund-Tison findings.
In claim 17 Teffeteller contends that at the resentencing proceeding the prosecutor made statements that diminished the jury's sense of responsibility for its recommendation, in violation of Caldwell.[22] This Court has repeatedly held that Caldwell claims can and should be raised on direct appeal and are procedurally barred in postconviction proceedings. See, e.g., Dugger v. Adams, 489 U.S. 401, 410 n. 6, 109 S.Ct. 1211, 103 L.Ed.2d 435 (1989); King, 555 So.2d at 355. Teffeteller counters that because Caldwell was not decided at the time of his resentencing, his claim is cognizable in postconviction proceedings. We find no merit to this argument. First, Caldwell was decided on June 11, 1985; our decision on direct appeal of Teffeteller's resentencing was not issued until August 21, 1986, and did not become final until October 28, 1986. In view of this chronology, Caldwell does not represent new law to this case that would overcome the procedural bar. See Cave v. State, 529 So.2d 293, 296 (Fla.1988). Second, as the United States Supreme Court explained in Dugger v. Adams, the ground for challenging such comments as improper-that they were objectionable under state law-is a necessary element of the subsequently available Caldwell claim and does not excuse a defendant's failure to object to the remarks at trial or challenge them on appeal. See Dugger v. Adams, 489 U.S. at 408, 410, 109 S.Ct. 1211. Thus, this substantive claim is barred from consideration in this habeas petition.
Teffeteller additionally argues that appellate counsel was ineffective in not raising the Caldwell claim on direct appeal. This claim also fails. Appellate counsel could not be deemed ineffective because no objections were interposed to the comments which are said to be offending. See Squires v. Dugger, 564 So.2d 1074, 1077 (Fla.1990). Finally, even if the issue had been properly preserved at trial and raised on appeal, we would find the issue to be without merit. As discussed above, the purported improper comments by the prosecutor were consistent with Florida's statutory scheme and did not violate Caldwell.
Additionally, Teffeteller claims that appellate counsel provided ineffective assistance as to most of the other issues. A habeas corpus petition is the proper vehicle for bringing claims of ineffective assistance by appellate counsel. See Medina v. Dugger, 586 So.2d 317, 318 (Fla. 1991). When entertaining a habeas petition *1027 based on a challenge of ineffective assistance of appellate counsel,
the issue before us is limited to "first, whether the alleged omissions are of such magnitude as to constitute a serious error or substantial deficiency falling measurably outside the range of professionally acceptable performance and, second, whether the deficiency in performance compromised the appellate process to such a degree as to undermine confidence in the correctness of the result."
Suarez v. Dugger, 527 So.2d 190, 192-93 (Fla.1988) (quoting Pope v. Wainwright, 496 So.2d 798, 800 (Fla.1986)). We find that Teffeteller has failed to demonstrate deficient performance by appellate counsel on many of the claims raised.[23] As to the other claims of ineffective assistance, Teffeteller has not shown prejudice from appellate counsel's performance. Consequently, he is not entitled to habeas relief on these claims. We address only those issues that appellate counsel could have, but did not, raise on appeal.
In claim 6 Teffeteller argues that appellate counsel was ineffective for failing to raise the issue of allegedly improper comments made by the prosecutor during the guilt phase of the trial. Most of these comments were raised on direct appeal and rejected as meritless by this Court. See Teffeteller, 439 So.2d at 842. As to those not raised by counsel on appeal, the record reveals that trial counsel did object to the questioning of one witness and moved for a mistrial because collateral crimes might be implicated by the testimony. The judge denied the objection and the motion for mistrial. While trial counsel's objection clearly preserved this issue for appeal, it is meritless. Contrary to Teffeteller's allegations, the prosecutor did not elicit evidence of Teffeteller's arrest for a Texas homicide during the guilt phase of the trial. In testifying about inculpatory statements Teffeteller made to him, the witness related that Teffeteller asked him to blame the victim's shooting on another man because "a dead man can't talk." While the jury was informed that this other companion was dead, there was no statement, or even implication, that the companion had been murdered or that Teffeteller had been arrested for his homicide. Thus, counsel cannot be faulted for not raising this point which would have clearly failed on appeal. See King, 555 So.2d at 357-58 ("Appellate counsel's failure `to brief an issue which is without merit is not deficient performance which falls measurably outside the range of professionally acceptable performance.'") (quoting Suarez, 527 So.2d at 193). As to the circumstantial evidence comment also raised in claim 6, there was no objection raised at trial and thus the issue could not be raised on appeal. Moreover, the comment was not improper. Thus, no relief is warranted on this claim.
Claim 7 involves the failure of appellate counsel to raise the issue of whether Teffeteller was denied the right to dismiss his trial counsel and represent himself under Faretta. Faretta requires that a defendant be allowed self-representation when the defendant clearly and unequivocally declares to the trial judge a desire for self-representation and the judge determines that the defendant has knowingly and intelligently waived the right to be represented by a lawyer. See Faretta v. California, 422 U.S. 806, 835-36, 95 S.Ct. 2525, 45 L.Ed.2d 562 (1975); Bell v. State, 699 So.2d 674, 677 (Fla. *1028 1997), cert. denied ___ U.S. ___, 118 S.Ct. 1067, 140 L.Ed.2d 127 (1998). No such declaration was made to the judge in this case. During the hearing on Teffeteller's pro se motion to dismiss counsel and to have counsel other than the public defender's office appointed, it was explained that Teffeteller could either allow counsel to make decisions after consulting with him or that Teffeteller could represent himself. Teffeteller made it clear that he did not want to represent himself and accepted Pearl as his attorney. Because Teffeteller never requested to represent himself, he was not entitled to an inquiry on the subject of self-representation under Faretta. See Howell v. State, 707 So.2d 674, 680 (Fla.), cert. denied, ___ U.S. ___, 118 S.Ct. 2381, 141 L.Ed.2d 747 (1998). Further, as noted above, the record shows that Teffeteller abandoned his request to dismiss trial counsel. Thus, appellate counsel cannot be ineffective for failing to raise this issue.
In claim 14 Teffeteller contends that appellate counsel was ineffective for failing to argue that the prosecutor improperly led the jury to believe that sympathy towards the defendant was an inappropriate consideration. However, appellate counsel was not ineffective in this regard for two reasons. First, the complained-of comments were never objected to by trial counsel and thus not preserved for appellate review. Second, this claim has been decided adversely to Teffeteller's contentions. See Saffle v. Parks, 494 U.S. 484, 110 S.Ct. 1257, 108 L.Ed.2d 415 (1990) (finding that defendant was not entitled to federal habeas relief based on claim that instruction during penalty phase telling the jury to avoid any influence of sympathy violated the Eighth Amendment).
In claim 16 Teffeteller argues that appellate counsel should have argued that at resentencing the jury was improperly presented evidence of his conviction for crimes committed after the instant offense. Such argument by counsel would have been unavailing. In Teffeteller's first direct appeal, this Court specifically stated that the evidence of the Texas murder and Florida aggravated assault convictions could be considered at resentencing. See Teffeteller, 439 So.2d at 847. The evidence of Teffeteller's prior convictions was properly admitted at resentencing and trial counsel had no basis to challenge its introduction. See King, 390 So.2d at 320; accord Craig, 510 So.2d at 868. Thus, appellate counsel was not ineffective in this regard.
Finally, claim 20 involves the adequacy of the court's voir dire questioning at resentencing regarding the jurors' knowledge of the case. Teffeteller contends that this claim involves fundamental error that is cognizable in postconviction proceedings even though not raised on direct appeal. We do not agree that the merits of this claim are cognizable on habeas when not raised as an issue on appeal. Cf. Johnson v. Wainwright, 498 So.2d 938 (Fla.1986) (issue of jury's separation during deliberations raised in habeas petition as claim that appellate counsel was ineffective for not raising issue on appeal).
Teffeteller also alleges that appellate counsel was ineffective for not raising the individual voir dire issue on direct appeal. Even had counsel brought this issue to our attention on appeal, we would have found no merit to the claim. The purpose of conducting voir dire is to secure an impartial jury. See Davis v. State, 461 So.2d 67, 69-70 (Fla.1984). To this end, the trial court has broad discretion in deciding whether prospective jurors must be questioned individually about publicity the case may have received. See Pietri v. State, 644 So.2d 1347, 1351 (Fla.1994); Johnson v. State, 608 So.2d 4, 9 (Fla.1992). Additionally, the United States Supreme Court has held that individual voir dire to determine juror impartiality in the face of pretrial publicity is constitutionally compelled only if the trial court's failure to ask *1029 these questions renders the trial fundamentally unfair. See Mu'Min v. Virginia, 500 U.S. 415, 111 S.Ct. 1899, 114 L.Ed.2d 493 (1991). As we noted in our discussion of a related 3.850 issue above, even though there was no individual, sequestered voir dire the judge did question the venire members individually about their knowledge of the case and ability to disregard any prior information and render an impartial verdict based solely on the evidence at the resentencing proceeding. This procedure meets the steps which should be taken when there is a claim of jury exposure to media coverage. See Derrick v. State, 581 So.2d 31, 35 (Fla.1991). Appellate counsel's failure to brief an issue which is without merit is not deficient performance which falls measurably outside the range of professionally acceptable performance. See King, 555 So.2d at 357-58; Suarez, 527 So.2d at 193. Thus, no relief is warranted on this claim.

Conclusion
Accordingly, we affirm the trial court's order denying Teffeteller's rule 3.850 motion and deny the petition for writ of habeas corpus.
It is so ordered.
HARDING, C.J., SHAW and WELLS, JJ., and OVERTON, Senior Justice, concur.
ANSTEAD, J., concurs in result only.
NOTES
[1] Howard Pearl was also the assistant public defender appointed to represent Roy Allen Harich. The trial court denied Harich's motion for postconviction relief based upon Pearl's appointment as a special deputy sheriff. On appeal, this Court concluded that the public defender's special deputy status did not result in a per se conflict of interest and that there was no actual conflict or deficiency in Pearl's representation of Harich. See Harich v. State, 573 So.2d 303, 306 (Fla.1990).
[2] Faretta v. California, 422 U.S. 806, 95 S.Ct. 2525, 45 L.Ed.2d 562 (1975).
[3] Teffeteller's Faretta hearing occurred before CCR was divided into three regional offices.
[4] In reopening Case No. 77,646, the Court has reviewed the briefs filed by the parties and has considered their arguments as to the issues raised in Teffeteller's original appeal of the trial court's denial of postconviction relief. We have considered all of the issues that Teffeteller has raised on appeal, including the non-Pearl issues raised after the trial court's denial of his original 3.850 motion and those raised after the denial of relief as to the Pearl issue during remand by this Court.
[5] Enmund v. Florida, 458 U.S. 782, 102 S.Ct. 3368, 73 L.Ed.2d 1140 (1982).
[6] Tison v. Arizona, 481 U.S. 137, 107 S.Ct. 1676, 95 L.Ed.2d 127 (1987).
[7] Caldwell v. Mississippi, 472 U.S. 320, 105 S.Ct. 2633, 86 L.Ed.2d 231 (1985).
[8] Claims 4, 14, 15, 17, 19, 20, and 21, as well as parts of claims 12 and 13, could have been raised on direct appeal.
[9] Claims 8-11, part of 12, 16, and 18 were raised on direct appeal and found to be meritless. See Teffeteller v. State, 495 So.2d 744 (Fla.1986) (affirming death sentence imposed during resentencing proceeding and finding that only two claims of error warranted discussion); Teffeteller v. State, 439 So.2d 840 (Fla.1983) (affirming conviction for first-degree murder, finding claims of guilt phase error to be "meritless," and finding no merit to claims that trial court incorrectly found certain aggravating factors and failed to find certain mitigating circumstances).
[10] Section 38.02, Florida Statutes (1979), provides that a suggestion of disqualification must be filed within thirty days after the party or attorney learns of the ground for disqualification or the ground is considered waived. In finding the instant motion to be untimely, the judge noted that Teffeteller knew about the reward offered by Volusia County Bar Association well before his original trial date of October 13, 1980, yet he never moved for disqualification on that basis nor ever raised such issue during his direct appeal from that proceeding.
[11] A motion to suppress and a supplemental motion to suppress were filed by counsel during Teffeteller's first trial that ended in mistrial. Prior to the trial at issue here, counsel filed a second supplemental motion to suppress that encompassed the grounds previously filed as well as a new ground. The State voiced no objection to the court entertaining the second supplemental motion because it was unclear whether the previous judge had ruled on the merits of the motion.
[12] Before denying the motion to suppress, the court received live testimony from Teffeteller, the Texas ranger who transported Teffeteller from Georgia to Texas, and one of the investigators from the Florida state attorney's office who interviewed Teffeteller in Georgia and Texas. The court also reviewed Teffeteller's testimony from the original suppression hearing and read depositions from the Texas ranger, the two Florida state attorney's office investigators, and the Texas district attorney who questioned Teffeteller.
[13] The mental health expert testified that Teffeteller suffered from an antisocial personality but no serious emotional problems, that his behavior would be influenced by those around him, that he had a poor self-concept even though he was articulate and bright, that he was a substance abuser, and that he would not be a management problem in prison. The expert also testified that he could not give his opinions as to Teffeteller's mental status at the time of the murder or the existence of the statutory mitigating circumstances because Teffeteller denied his involvement in the murder. Teffeteller testified as to his long history of alcohol and drug abuse, his military service, and his family background.
[14] As best as we can glean from the record below, it appears that Teffeteller claims the mental health expert was not provided evidence of his "history of mental illness," excessive drug use, and abusive father. However, the "history of mental illness" consists of an Air Force diagnosis that Teffeteller has a "character and behavior disorder ... best described as passive dependent personality," but that there is "no indication of mental disorder." Affidavits from family members and friends support Teffeteller's self-reports of drug and alcohol abuse and describe both a hot-tempered father who often beat his children and a strong disciplinarian. Except for the reports about the father's abuse, this evidence is cumulative to the information known by the mental health expert and presented during his testimony. See Jennings v. State, 583 So.2d 316, 321 (Fla.1991) (rejecting claim that mental health experts lacked adequate information on defendant's history of alcohol problems where additional evidence would have been merely cumulative). We also note that the legal standard is reasonably effective counsel, not perfect or error-free counsel. See Jennings, 583 So.2d at 321; Waterhouse v. State, 522 So.2d 341, 343 (Fla. 1988). Thus, even had Teffeteller spelled out these allegations in detail, we would not find counsel ineffective in this regard.
[15] Teffeteller claims that the prosecutor acted improperly during the guilt phase of the trial by: presenting evidence of the Texas homicide; presenting victim impact evidence; arguing that the lesser included offenses were inapplicable, but that the court was required to instruct the jury on them; praising the felony murder rule; informing the jury that they may not consider sympathy for the defendant in their deliberations; and telling the jury that it must serve as the conscience of the community.
[16] Teffeteller claims that the prosecutor made the following improper comments during the penalty phase of the trial: telling the jury that the State's expert found no mitigating circumstances and that he wanted the death sentence imposed; claiming that the Teffeteller was malingering and was a liar; stating that the guilt phase jury had unanimously found Teffeteller guilty of premeditated murder as the triggerman; inserting references to the victim's personal characteristics; and telling the jury that it was not to consider sympathy for the defendant in its sentencing deliberations.
[17] On direct appeal, Teffeteller raised claims relating to the lesser included offenses instruction and the comments that sympathy was not a proper consideration and that the jury must be the conscience of the community.
[18] Claims 1, 2, 3, part of 6, 8, 21, and 22. See Teffeteller, 495 So.2d at 745; Teffeteller, 439 So.2d at 842, 846-47 (finding issues either did not warrant discussion or were meritless).
[19] Claims 4, 5, part of 6, 7, 9-12, and 14-20.
[20] Hitchcock v. Dugger, 481 U.S. 393, 107 S.Ct. 1821, 95 L.Ed.2d 347 (1987).
[21] In Hall v. State, 541 So.2d 1125, 1128 (Fla.1989), we held that Hitchcock claims must be presented to the trial court in a rule 3.850 motion for postconviction relief and would not be cognizable in habeas corpus proceedings. However, we also held that our ruling would apply to all such claims "after the filing" of our opinion in Hall. Id. Because Teffeteller's habeas petition was filed prior to Hall, but held in abeyance by this Court, we address his purported Hitchcock claim even though raised in a habeas proceeding.
[22] Caldwell v. Mississippi, 472 U.S. 320, 105 S.Ct. 2633, 86 L.Ed.2d 231 (1985).
[23] No objections were raised at the trial court to the purported errors in claims 9, 10, 12, 15, and 18; claims 4 and 5 were never raised in the trial court. Thus, none of these issues were preserved for appellate counsel to raise. See Medina, 586 So.2d at 318 (stating that appellate counsel cannot be ineffective for failing to raise unpreserved claims); Suarez, 527 So.2d at 193 (same). Claims 1, 2, 3, 8, 11, 21, 22 and part of 6 were raised on direct appeal and rejected as meritless by this Court. See Swafford v. Dugger, 569 So.2d 1264, 1266 (Fla.1990) ("After appellate counsel raises an issue, failing to convince this Court to rule in an appellant's favor is not ineffective performance.").