971 So.2d 131 (2007)
Peter P. CLAPS, Appellant,
v.
STATE of Florida, Appellee.
No. 2D06-5279.
District Court of Appeal of Florida, Second District.
November 16, 2007.
*132 VILLANTI, Judge.
We affirm the trial court's summary denial of the claims in Peter P. Claps' motion for postconviction relief, but we write to make explicit what has long been implicit in Florida regarding double jeopardy: a defendant may be charged and tried for both an offense and a necessarily lesser-included offense even though the defendant cannot ultimately be adjudicated and sentenced for both offenses due *133 to the protections afforded by the prohibition against double jeopardy.
Following a jury trial, on March 22, 2002, Claps was sentenced for DUI manslaughter, leaving the scene of an accident involving injury and/or death, driving under the influence of alcoholic beverages or controlled substances with injury, and two counts of driving under the influence of alcoholic beverages or controlled substances with property damage. On double jeopardy grounds, the court neither adjudicated nor sentenced Claps on three other charges. The court sentenced him to consecutive fifteen-year prison terms for the offenses of DUI manslaughter and leaving the scene and to time served for the remaining offenses. This court affirmed the judgment and sentences on direct appeal. See Claps v. State, 860 So.2d 416 (Fla. 2d DCA 2003) (table decision).
In January 2005, Claps filed a timely motion pursuant to Florida Rule of Criminal Procedure 3.850 seeking to vacate the judgment and sentences, asserting three grounds for relief based on ineffective assistance of counsel at various stages of the trial. The postconviction court ultimately granted relief and ordered a resentencing hearing on one claim, which led to a reduction in prison time on one count, but summarily denied the remaining claims. Following resentencing, Claps filed this appeal.
In his petition, Claps alleges that trial counsel was ineffective for failing to move prior to trial for dismissal on double jeopardy grounds of some of the charges against him and that this failure resulted in prejudice to Claps. In particular, he asserts that counsel should have moved for dismissal of the charges resulting in guilty verdicts on the counts for which he was neither adjudicated nor sentenced, arguing that merely presenting those charges to the jury violated his right against double jeopardy and prejudiced his defense.
"The Double Jeopardy Clause of the Fifth Amendment provides that no person shall be `subject for the same offence to be twice put in jeopardy of life or limb.'" Jones v. Thomas, 491 U.S. 376, 380, 109 S.Ct. 2522, 105 L.Ed.2d 322 (1989). The Florida Constitution has a similar provision:
Modeled after the double jeopardy provision of the Fifth Amendment to the United States Constitution, article I, section 9 of the Florida Constitution states that "no person shall . . . be twice put in jeopardy for the same offense." Art. I, § 9, Fla. Const. This Court has explained that "where multiple punishments are imposed at a single trial, `the role of the constitutional guarantee against double jeopardy is limited to assuring that the court does not exceed its legislative authorization by imposing multiple punishments arising from a single criminal act.'" Hayes v. State, 803 So.2d 695, 699 (Fla.2001) (quoting Brown v. Ohio, 432 U.S. 161, 165, 97 S.Ct. 2221, 53 L.Ed.2d 187 (1977)).
Kelso v. State, 961 So.2d 277, 279 (Fla. 2007). The concept of double jeopardy affords three basic protections: "against a second prosecution for the same offense following an acquittal, against a second prosecution for the same offense after a conviction, and against multiple punishments for the same offense." Rodriguez v. State, 875 So.2d 642, 644 (Fla. 2d DCA 2004) (citing North Carolina v. Pearce, 395 U.S. 711, 717, 89 S.Ct. 2072, 23 L.Ed.2d 656 (1969)). Its emphasis is thus on adjudications of guilt and sentences, not on jury verdicts. While the latter may be a condition precedent to an adjudication of guilt and sentence, by itself a verdict imposes no punishment.
*134 Claps argues, however, that counsel was ineffective for not moving to prevent the jury from hearing all of the charges which the State felt it could prove, when both the State and the court knew he could not lawfully be adjudicated and sentenced for some of the charges if found guilty on others. Generally, when asserting a claim of ineffective assistance of counsel, a defendant must prove that counsel's performance was deficient and that the deficient performance prejudiced the defense. See Strickland v. Washington, 466 U.S. 668, 687, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). In Claps' case, the postconviction court concluded that while the rule against conviction for multiple counts arising from a single act is clear, no law prevents charging a defendant with multiple counts. In support of that conclusion, the court cited a successful State appeal of just the kind of dismissal of charges that Claps now argues his counsel should have requested. See State v. Lewek, 656 So.2d 268, 268 (Fla. 4th DCA 1995) (holding that "[d]espite this clear rule saying that a defendant cannot be convicted of both manslaughter and vehicular homicide for a single death, there is no such rule saying that he cannot be charged with both crimes"). Thus, Claps' argument fails because counsel cannot be found ineffective for failing to pursue a course of action that counsel wouldor shouldhave known was futile. See Teffeteller v. Dugger, 734 So.2d 1009, 1020 (Fla.1999).
In Lewek, the appellate court reversed a trial court's dismissal of a vehicular homicide charge as a lesser-included offense of manslaughter. Id. Thus, even if Claps' trial counsel had succeeded in having the lesser charges dismissed prior to trial, that result would have been considered reversible error. Therefore, counsel's failure to move for dismissal was neither deficient nor prejudicial. "When a convicted defendant complains of the ineffectiveness of counsel's assistance, the defendant must show that counsel's representation fell below an objective standard of reasonableness." Strickland, 466 U.S. at 687-88, 104 S.Ct. 2052. It can hardly be considered unreasonable for counsel not to request a disposition that would inevitably be considered reversible error if granted.
Even so, Claps argues that this court should extend double jeopardy protections to an earlier stage in the proceedings, such as the information or jury selection phase. His argument, though, fails for the reasoning already noted. Double jeopardy concerns require only that the trial judge filter out multiple punishments at the end of the trial, not at the beginning. Although Claps argues that he suffered prejudice when the jury was faced with considering multiple charges, "[t]he purpose [of double jeopardy] is to ensure that sentencing courts do not exceed, by the device of multiple punishments, the limits prescribed by the legislative branch of government, in which lies the substantive power to define crimes and prescribe punishments." See Jones, 491 U.S. at 381, 109 S.Ct. 2522. It is the legislature's prerogative to define the elements of a statutory crime, Burnette v. State, 901 So.2d 925, 927 (Fla. 2d DCA 2005), and proof of essential elements of crimes, such as those applicable to Claps, is achievable in more than one manner, see, e.g., State v. Tinsley, 683 So.2d 1089 (Fla. 5th DCA 1996) (holding that the elements of second-degree murder can be satisfied in a variety of ways other than by use of a weapon). The State's ability to choose from a menu of options to pursue a criminal conviction in no way conflicts with double jeopardy considerations.
Claps, however, would have us usurp the State's discretion to make strategic decisions about charging alleged criminal *135 activity. Further, he would have us usurp the jury's role in deciding facts and determining guilt or innocence. This would be an inappropriate judicial function, infringing on the executive domain of state attorneys to make strategic and tactical decisions within the boundaries of their policies and duty to follow the law. See Bordenkircher v. Hayes, 434 U.S. 357, 364, 98 S.Ct. 663, 54 L.Ed.2d 604 (1978) (noting the discretion afforded prosecutors"so long as the prosecutor has probable cause to believe that the accused committed an offense defined by statute"  to decide whether to prosecute and which charges to bring); see also Wilcott v. State, 509 So.2d 261, 265 (Fla.1987) (Shaw, J., dissenting) (asserting that the State is entitled to charge "so-called permissive lesser included offenses as separate offenses" if it so chooses and commenting that "[i]t is not the prerogative of the courts to substitute their judgment for that of the prosecutor on what charges should be brought").
The Double Jeopardy Clauses of the United States and Florida Constitutions provide a defendant with a shield from punishment; conversely, they do not provide a defendant with a sword to wield against the State's executive decisions. See Ohio v. Johnson, 467 U.S. 493, 502, 104 S.Ct. 2536, 81 L.Ed.2d 425 (1984) (observing that a defendant "should not be entitled to use the Double Jeopardy Clause as a sword to prevent the State from completing its prosecution" on remaining charges after being found guilty of other related offenses). Allowing the jury to exercise its fact-finding function to decide which crimeor crimes  may have been committed, even when based on the same facts, is a classic and appropriate function of the jury trial system, just as a court's determination as a matter of law which guilty verdicts will be precluded from adjudication and sentencing on double jeopardy grounds is a similarly appropriate function of the judiciary.
Affirmed.
NORTHCUTT, C.J., and WHATLEY, JJ., Concur.