768 So.2d 1179 (2000)
Henry HARRIS, Appellant,
v.
STATE of Florida, Appellee.
No. 4D99-3202.
District Court of Appeal of Florida, Fourth District.
September 20, 2000.
Rehearing Denied October 17, 2000.
*1180 Henry Harris, Lowell, pro se.
Robert A. Butterworth, Attorney General, Tallahassee, and Daniel P. Hyndman, Assistant Attorney General, West Palm Beach, for appellee.
TAYLOR, J.
Henry Harris appeals the trial court's order summarily denying his rule 3.850 motion for postconviction relief. For the reasons explained below, we affirm.
Harris was charged with first degree murder in the shooting death of Vincent Troy Brewton, attempted first degree murder of Jimmy Wilcox, two counts of robbery with a firearm, attempted robbery with a firearm, two counts of kidnaping, burglary, arson, and grand theft. A jury found him not guilty of first degree murder and attempted robbery with a firearm, but found him guilty of: (1) attempted first degree murder; (2) one count of robbery with a firearm; (3) two counts of kidnaping with a firearm; (4) grand theft; (5) arson; (6) grand theft; and (7) the lesser included offense of trespass of an occupied structure. We reversed Harris' conviction for attempted first degree murder based on State v. Gray, 654 So.2d 552 (Fla.1995), and remanded for re-sentencing. See Harris v. State, 658 So.2d 1226 (Fla. 4th DCA 1995). After re-sentencing, Harris filed a second appeal challenging the score sheet used at re-sentencing. We affirmed per curiam in Harris v. State, 681 So.2d 291 (Fla. 4th DCA 1996).
Subsequently Harris filed a motion to vacate and correct his sentence pursuant to Florida Rule of Criminal Procedure 3.850. In his motion appellant raised three grounds for relief. We affirm the trial court's denial of postconviction relief on all three grounds, but address the third ground, in which appellant alleged that he was denied effective assistance of counsel due to his attorney's concessions during closing argument that appellant was guilty of lesser included offenses. Appellant contended that this was an unreasonable trial strategy, to which he did not consent.
Testimony at trial showed that appellant and co-defendant Brian Roberts forcibly entered the townhouse shared by Jimmy Wilcox and Vincent Brewton, robbed and abducted them at gun point, then transported them in the trunk of Wilcox's car to a remote grove. There, Roberts shot Brewton in the head as he lay face down on the ground. As Wilcox tried to run away, appellant fired several shots at him. Roberts caught up with Wilcox and held him while appellant struck him in the head with a shotgun. Wilcox struggled with Roberts and eventually managed to escape. Appellant and Roberts left the grove and abandoned the car at a location in Port St. Lucie. Sometime later, appellant returned to burn the car.
After his arrest, appellant gave a taped statement to the police. He told them that Brian Roberts had asked him for help in getting back possessions stolen from him by Wilcox and/or Brewton. Appellant said he agreed and that the plan was to enter the home, tie up the occupants, and retrieve Roberts' belongings. He said that it was not until he and Roberts were in or near the victims' home that Roberts mentioned killing them so as to avoid identification. He said he repeatedly urged Roberts to just "tie" them up and leave. A state witness, Darcey Macon, corroborated appellant's statement. Wilcox, the surviving victim, also testified. Although appellant admitted striking Wilcox on the head with a gun, he denied shooting at Wilcox as he was running away and said his gun accidently fired twice and missed him.
*1181 Defense counsel argued to the jury that appellant and Roberts' plan began as a college prank, intended not to kill, kidnap, or rob the victims but only to "dis'em" or "jack'em" and "mess with their minds." He asked the jury to find appellant not guilty on the charge of attempted first degree murder of Wilcox, and, instead, to find Harris guilty only of aggravated battery or assault. He argued:
I will stipulate that you would not error [sic] in finding the defendant guilty under Count II of aggravated battery. That's what he did when he struck him on the head, that was an aggravated battery. He intentionally touched and struck Jimmy Wilcox against his will, can't get around it, I'm not going to try. He's guilty of this crime. Aggravated battery. Find him guilty of aggravated battery under Count II because that's what he's guilty of, or assault.
Similarly, defense counsel requested the jury to find appellant not guilty of the kidnaping charges. He urged the jury to consider the elements of false imprisonment in relation to appellant's conduct. He said:
Look at the definition of false imprisonment. Henry Tyrone Harris might be guilty of false imprisonment, it's the lesser included of the kidnaping charge.
It says, Before you can prove this crime Henry Tyrone Harris forcibly, secretly or by threat to confine, abduct, imprison or restrain because he did that. Henry Tyrone had no lawful authority, he clearly didn't.
Three, Henry Tyrone Harris acted for any purpose other than to hold for ransom, commit or facilitate the commission of a felony, inflict bodily harm or interfere with the performance of any Governmental function. Clearly that was not his intent. He did these things with the intent of dissing them or jacking them or whatever the word is. But doesn't matter, Henry is guilty of this crime because it doesn't matter why he did it as long as its not one of the four. He's guilty of this crime. I submit you should find him guilty.
Defense counsel also argued that the jury could not find appellant guilty of burglary because he had no intent to enter the structure to murder, rob, or kidnap. He conceded, however, that the facts proved appellant's guilt on a lesser included trespass charge. Finally, defense counsel conceded appellant's guilt on second degree arson and grand theft, stating:
Arson in the second degree. Guilty. Look at the elements. Henry Tyrone Harris did this. Find him guilty of arson, he's guilty of it.
Grand theft. I think it's a stretch but I'll give it to them. Theoretically when Henry Tyrone Harris took the car because I think the evidence was after the killing went down Henry drives the car away. That's a grand theft. Find him guilty of grand theft. That's what he's guilty of.
In his rule 3.850 motion appellant alleged that his attorney's concession on these lesser included offenses was inconsistent with his theory of defense: that he was not a participant in any of the crimes. Notably, appellant's motion does not acknowledge his admissions to the police concerning his partial involvement in these crimes. Nor does it explain how these incriminating statements, along with other testimony in the trial, could square with a complete "non-participant" defense. Appellant's taped statement, which was played to the jury, described how appellant entered the victims' residence with his face covered, forced the victims to lie on the floor, rode in the car that transported the victims to the remote area, shot at Wilcox, and burned Wilcox's car with gasoline.
Upon receiving appellant's rule 3.850 motion, the trial court ordered the State to respond. The state filed a detailed response, attaching extensive portions of the trial transcript. In its order denying the postconviction motion, the trial court acknowledged that an evidentiary hearing is usually required when a defendant contends *1182 that he was denied effective assistance of counsel because of an unreasonable trial strategy. However, the court explained that in this case it could decide the matter without a hearing because the record clearly demonstrated that defense counsel's concession strategy was reasonable and resulted in no prejudice to appellant. The court stated:
It is apparent that defense counsel's concessions were an attempt to overcome evidence detrimental to his case, and an attempt to maintain credibility with the jury. To some extent, Mr. Udell's strategy succeeded. The jury found the Defendant not guilty of first degree murder, not guilty of attempted robbery with a firearm, and guilty of the lesser included offense, trespass of an occupied structure. The Defendant has failed to satisfy either prong of Strickland.

We agree that appellant's claim of ineffective assistance of counsel is controlled by the two-prong test articulated in Strickland v. Washington, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). In Strickland, the Court set forth the elements for establishing claims based on ineffective assistance of counsel:
First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable. Unless a defendant makes both showings, it cannot be said that the conviction or death sentence resulted from a breakdown in the adversary process that renders the result unreliable.
466 U.S. at 687, 104 S.Ct. 2052.
Appellant relies upon the Florida Supreme Court's decision in Nixon v. Singletary, 758 So.2d 618 (Fla.2000), in arguing that the trial court was required to conduct an evidentiary hearing to determine if he consented to his attorney's concession strategy. In Nixon, however, the supreme court remanded the case to the trial court to determine whether Nixon consented to the trial strategy because it found that defense counsel's concession of guilt in that case was per se ineffective assistance of counsel. Id. at 624. There, defense counsel conceded the defendant's guilt to the charged offense of first degree premeditated murder. He did so during the guilt phase of the trial to seek leniency during the penalty phase. The supreme court observed that Nixon fell within the "narrow spectrum of cases where the defendant was completely denied effective assistance of counsel." Id. at 622-23. It explained that while the Strickland standard applies to most ineffective assistance of counsel claims, the rule announced in United States v. Cronic, 466 U.S. 648, 104 S.Ct. 2039, 80 L.Ed.2d 657 (1984), applied in Nixon because "[t]rial counsel's statements during opening and closing arguments raise a question as to whether Nixon's trial counsel did, in fact, fail to subject the state's case to meaningful adversarial testing." Id. at 622. Thus, the court held that no specific showing of prejudice would be required if Nixon could establish that he did not consent to counsel's strategy. Id. at 624.
In this case, however, defense counsel's concession to lesser included offenses did not constitute a failure to subject the state's case to meaningful adversarial testing so as to warrant a presumption of prejudice regarding defendant's claim of ineffective assistance of counsel. Thus, the Strickland standard applies. See McNeal v. Wainwright, 722 F.2d 674 (11th Cir.1984)(applying Strickland and holding that argument by defense counsel suggesting guilt on charge of manslaughter rather than first degree murder was tactical decision). See also *1183 Brown v. State, 755 So.2d 616 (Fla.2000)(defense counsel's tactical decision to concede guilt to lesser homicide charge reasonable in light of defendant's confession).
As discussed above, appellant must show that (1) counsel's performance was deficient and (2) such deficient performance prejudiced appellant. To satisfy the second prong, appellant must demonstrate a reasonable probability that but for counsel's deficient performance, the result of the proceeding would have been different. Assuming arguendo that counsel was deficient in conceding appellant's guilt on lesser included offenses without his consent, appellant nonetheless failed to demonstrate prejudice. The trial record reflects that his attorney's concessions constituted a reasonable tactical decision made in consideration of the overwhelmingly inculpatory evidence of appellant's statement to the police and other trial testimony. Even absent these concessions, it is not reasonably likely that the result of appellant's trial would have been any different. Further, had appellant presented the defense he offered in his postconviction motion, i.e., that he did not participate at all in the charged crimes, his defense would have been severely undermined by the wealth of incriminating evidence before the jury.
In sum, we agree with the trial court that the record in this case conclusively rebutted appellant's claim that counsel's performance was deficient and that such deficient performance prejudiced him. Thus, he was not entitled to an evidentiary hearing on his claim of ineffective assistance. See Rose v. State, 617 So.2d 291, 296 (Fla.), cert. denied, 510 U.S. 903, 114 S.Ct. 279, 126 L.Ed.2d 230 (1993)(To be entitled to an evidentiary hearing on a claim of ineffective assistance of counsel, the claimant must specify facts which are not conclusively rebutted by the record and which demonstrate a deficiency in performance that prejudiced the claimant).
We point out, however, as did the trial court, that most postconviction proceedings will require an evidentiary hearing "where a full exploration of the trial attorney's strategy decisions and his communications with his client can be aired." See York v. State, 731 So.2d 802, 804 (Fla. 4th DCA 1999). We also reiterate that defense counsel should obtain on-the-record consent from their clients to strategic decisions, such as admissions to lesser crimes, to avoid these appellate or postconviction issues. Id. at 804; Geddis v. State, 715 So.2d 991, 992 (Fla. 4th DCA 1998). See also Nixon, 758 So.2d at 625("[T]o avoid similar problems in the future ... if a trial judge ever suspects that a similar strategy is being attempted by counsel for the defense, the judge should stop the proceedings and question the defendant on the record as to whether or not he or she consents to counsel's strategy.").
We affirm the order denying appellant's motion for postconviction relief.
AFFIRMED.
WARNER, C.J. and STEVENSON, J., concur.