831 So.2d 121 (2002)
Gary LAWRENCE, Appellant,
v.
STATE of Florida, Appellee.
Gary Lawrence, Petitioner,
v.
Michael W. Moore, etc., et al., Respondents.
Nos. SC00-2290, SC01-674.
Supreme Court of Florida.
October 17, 2002.
*124 Joseph F. McDermott, St. Petersbrug, FL, for Appellant/Petitioner.
Robert A. Butterworth, Attorney General, and Barbara J. Yates, Assistant Attorney General, Tallahassee, FL, for Appellee/Respondent.
PER CURIAM.
Gary Lawrence, an inmate under sentence of death, appeals an order of the circuit court denying his amended motion for postconviction relief under Florida Rule of Criminal Procedure 3.850 and petitions this Court for a writ of habeas corpus. We have jurisdiction. See art. V, § 3(b)(1),(9), Fla. Const. For the reasons that follow, we affirm the denial of Lawrence's postconviction motion and deny his petition for habeas corpus.

PROCEEDINGS TO DATE
The facts are set forth in Lawrence v. State, 698 So.2d 1219 (Fla.1997), where this Court affirmed Lawrence's convictions and sentences:
Shortly after Gary and Brenda Lawrence were married, they separated, and another man, Michael Finken, moved in with Brenda and her two daughters, Stephanie and Kimberly Pitts, and Stephanie's friend, Rachel Matin. On the day of the murder, July 28, 1994, Gary and Michael drove Brenda to work and then drank beer at a friend's house. Later, Gary and Michael picked Brenda up and the three returned to the friend's house where they drank more beer. After the three returned to Brenda's apartment, Gary and Michael argued and Gary hit Michael when he learned that Michael had been sleeping with Brenda. Gary and Michael seemed to resolve their differences, and Michael fell asleep on the couch. Gary and Brenda conversed, and Brenda went through the house collecting weapons including a pipe and a baseball bat. Gary and Brenda told Kimberly and Rachel that they were "going to knock off Mike." Gary told Kimberly to "stay in your bedroom no matter what you hear."
The trial court described what happened after Gary and Brenda spoke to the girls:
Thereafter, the two girls heard what they described as a pounding sound. At one point, Rachel Matin stated that she heard the victim say, "stop it, if you stop, I'll leave." She stated that she heard that statement several times. Kimberly Pitts stated she heard the victim say "please don't hit me, I'm already bleeding." The victim's pleas, however, were met with more pounding. Once the pounding stopped, the girls were required to assist in the clean up and described to the jury what they observed. Kimberly stated that much of the victim's right side of his face was missing and his chin was knocked over to his ear. Rachel Matin stated that there was no skin left on the victim's face and part of his nose was missing. Apparently the victim was still alive. Kimberly observed her mother coming out of the kitchen area with what appeared to be a dagger and then, although not seeing the dagger in her hand at the time, observed her mother make a *125 stabbing motion toward the victim with something in her hand.
It was at that time when Brenda Lawrence requested that the girls obtain the assistance of Chris Wetherbee. Upon his entrance into the home, Chris Wetherbee observed the victim's head being caved in, blood all over, the victim's eyeball protruding approximately three inches and a mop handle shoved into the victim's throat. Wetherbee asked Gary Lawrence, "what's going on?" At which time the Defendant responded by pulling out the mop handle and kicking the victim and making the statement "this is what's going on." Immediately after removing the mop handle from the victim's throat, Wetherbee heard the victim give approximately three or four ragged breaths at which time the victim thereafter stopped breathing and apparently expired. The Defendant, Gary Lawrence, told Wetherbee that he had beat him with a pipe until it bent and then beat him with a baseball bat.
Chris Wetherbee summarized the victim's state: "And [he] looked like something off of one of the real good horror movies." Gary and Brenda then removed a small amount of money from Michael's pockets, wrapped the body in a shower curtain and placed the body in Michael's car, and Gary drove to a secluded area where he set the body afire. When Gary returned home, he and Brenda danced.
Gary Lawrence was arrested later that evening driving Michael's car and subsequently confessed, admitting that he had beaten Michael because Michael had been sleeping with Brenda. Lawrence was charged with first-degree murder, robbery, grand theft of a motor vehicle, and conspiracy to commit murder. At trial, the medical examiner testified as follows: Michael died of blunt trauma and possible asphyxia; Michael was alive when the mop handle was thrust down his throat; Michael's blood alcohol level was very high; and one or more of the blows to Michael's head could have caused loss of consciousness. Lawrence was convicted of first-degree murder, conspiracy to commit murder, auto theft, and petty theft.
During the penalty phase, Lawrence presented testimony of a brother, a psychologist, and a psychiatrist. The court followed the jury's nine-to-three vote and imposed a sentence of death based on three aggravating circumstances, [Note 1] no statutory mitigating circumstances, and five non-statutory mitigating circumstances. [Note 2] Lawrence also was sentenced to concurrent five-year terms of imprisonment on the conspiracy and auto theft charges and time served on the petty theft charge. (Brenda was tried separately and sentenced to life imprisonment for her role in the crimes.)
[Note 1:] The trial court found that the murder had been committed while Lawrence was under sentence of imprisonment; that the murder was heinous, atrocious, or cruel (HAC); and that the murder was committed in a cold, calculated, and premeditated manner (CCP).
[Note 2:] The trial court found that Lawrence cooperated with police; Lawrence had a learning disability and low IQ; Lawrence had a deprived childhood; Lawrence was under the influence of alcohol at the time of the crimes; and Lawrence did not have a violent history.
Lawrence v. State, 698 So.2d 1219, 1220-21 (Fla.1997).
On direct appeal, Lawrence raised the following claims: (1) his death sentence was disproportionate to other death penalty *126 cases; (2) the murder was not committed in a cold, calculated, and premeditated manner; (3) the murder was not heinous, atrocious, or cruel; and (4) the trial court erred in failing to find statutory mitigating circumstances and in rejecting the disparate treatment of his co-defendant Brenda as a mitigating circumstance. This Court did not find error in any of Lawrence's claims and affirmed his convictions and sentences.
On April 22, 1999, Lawrence filed an amended motion for postconviction relief pursuant to Florida Rules of Criminal Procedure 3.850, asserting fourteen grounds for relief[1] and a request to amend his postconviction motion. Ground one was subdivided into fourteen claims of ineffective assistance of counsel.[2] On November 8, 1999, the trial court conducted a Huff[3] hearing to discuss the issues raised in Lawrence's rule 3.850 motion. On March 8, 2000, the trial court entered an order setting forth the following issues to be resolved during a postconviction evidentiary hearing: (1) defense counsel's concession of guilt to lesser included offenses in the guilt phase without Lawrence's consent; (2) defense counsel's concession of guilt to first-degree murder in the penalty phase without Lawrence's consent; and (3) the failure to advise Lawrence of his right to testify. The remaining claims were summarily denied or waived. Following the evidentiary hearing, the circuit court issued a final order denying relief. Lawrence appealed the circuit court's denial of his postconviction motion and filed a petition for writ of habeas corpus raising thirteen claims of ineffective assistance of appellate counsel.[4]

*127 3.850 APPEAL
Lawrence first asserts that the trial court erred in summarily denying his claim relative to defense counsel's failure to present evidence of mental deficiencies and use of intoxicants. He specifically raised three subclaims contending that defense counsel failed (1) to establish his excessive use of intoxicants at the time of the homicide and to obtain testimony or records from nurse Carol Ann Thomas demonstrating his use of intoxicants; (2) to pursue or utilize adequate expert testimony in the guilt or penalty phase relative to his impairment from intoxicants or drugs; and (3) to pursue or present adequate evidence of Lawrence's mental or emotional disturbance. We address each subclaim in turn.
This Court has held on numerous occasions that a defendant is entitled to an evidentiary hearing on his motion for postconviction relief unless (1) the motion, files and records in the case conclusively show that the defendant is not entitled to any relief, or (2) the motion or a particular claim is facially invalid. See Cook v. State, 792 So.2d 1197, 1201-1202 (Fla.2001); Maharaj v. State, 684 So.2d 726 (Fla.1996). The defendant carries the burden of establishing a prima facie case based upon a legally valid claim. This Court has held the following:
A motion for postconviction relief can be denied without an evidentiary hearing when the motion and the record conclusively demonstrate that the movant is entitled to no relief. A defendant may not simply file a motion for postconviction relief containing conclusory allegations that his or her trial counsel was ineffective and then expect to receive an evidentiary hearing. The defendant must allege specific facts that, when considering the totality of the circumstances, are not conclusively rebutted by the record and that demonstrate a deficiency on the part of counsel which is detrimental to the defendant.
Kennedy v. State, 547 So.2d 912, 913 (Fla. 1989) (citations omitted); see also Freeman v. State, 761 So.2d 1055, 1061 (Fla. 2000).
The record on direct appeal refutes Lawrence's factual allegations in his first *128 subclaim. Defense counsel John Miller argued during his opening and closing statements in the guilt phase of the trial that Lawrence had been drinking heavily and was intoxicated the day of the murder. Four of the State's witnesses (Kimberly Pitts, Chris Wetherbee, Rachel Matin, and Evan Adams) testified on cross-examination that on the day of the murder Lawrence had been drinking and was intoxicated. At Miller's request, the trial court agreed to include an instruction on the defense of voluntary intoxication and, thereafter, did so.
During the guilt phase, Miller also attempted to admit testimony from the jail nurse Carol Thomas regarding the last time Lawrence had anything to drink and the amount of alcohol he consumed. The State objected on hearsay grounds. Thomas's testimony was proffered, and the trial court sustained the State's objection on the grounds that it was self-serving. The trial court also refused to admit Thomas's report.
During the penalty phase, Lawrence's brother testified that Lawrence began drinking with their father at an early age. Psychologist James Larson testified that Lawrence came from a dysfunctional family where both parents were alcoholics, that he began using drugs and alcohol "at a very early age" and that Lawrence had a personality disorder, was immature, and was prone to jealousy and inappropriate expressions of anger that were aggravated by his use of alcohol. Miller's sentencing memorandum urged that Lawrence's addiction to alcohol and drugs and his being intoxicated at the time of the murder should be found in mitigation. Thereafter, the trial court found Lawrence's intoxication to be a nonstatutory mitigator, albeit one of little weight.
As the trial court found, the record conclusively refutes Lawrence's first subclaim. See Sireci v. State, 773 So.2d 34, 45 (Fla. 2000) (finding that the summary denial was proper where record conclusively refuted claim); Downs v. State, 740 So.2d 506, 515-16 (Fla.1999) (concluding that evidence complained about in postconviction motion was, in fact, presented at trial). Therefore, we affirm the trial court's summary denial.
In Lawrence's second subclaim, he contends that his defense counsel was ineffective for not pursuing or utilizing adequate expert testimony relative to his impairment from intoxicants or drugs. The trial court summarily denied this bare subclaim on the basis that it was conclusively refuted by the record. We agree.
There was a substantial amount of expert testimony concerning Lawrence's drug and alcohol use in the penalty phase. The record on direct appeal indicates that Dr. Larson and Dr. Galloway gave detailed evaluations of Lawrence's history of use of intoxicants. Dr. Larson testified that Lawrence did not have a major mental illness but did exhibit a pattern of personality disorders and that the features and characteristics of such disorders might be manifested by Lawrence's history of substance abuse, particularly alcohol. Dr. Galloway testified that Lawrence had no diagnosable organic defects but that he had difficulty with his intellectual and emotional development. Thus, the record refutes Lawrence's second subclaim, and we affirm the trial court's summary denial. See Asay v. State, 769 So.2d 974, 982 (Fla. 2000); Freeman v. State, 761 So.2d 1055, 1061 (Fla.2000).
With regard to Lawrence's third subclaim, he contends that defense counsel failed to pursue or present adequate evidence of his extreme mental or emotional disturbance. We find this contention conclusory and ill pled. Lawrence failed to *129 plead any specific facts that were not conclusively rebutted by the record. See LeCroy v. Dugger, 727 So.2d 236, 239-40 (Fla.1998). We conclude that the trial court did not err in finding that this subclaim was too conclusory to warrant an evidentiary hearing. Because all three subclaims were either legally insufficient or refuted by the record, we find that Lawrence's first ineffective assistance of counsel claim regarding the trial presentation of his mental deficiencies and use of intoxicants was properly denied without an evidentiary hearing.
Lawrence next contends that the trial court erred in denying his ineffective assistance of counsel claim based upon defense counsel's concession of guilt to lesser included offenses in the guilt phase and to first-degree murder in the penalty phase without his on-the-record consent. We disagree.
In order to establish ineffective assistance of counsel, Lawrence must show that counsel's performance was deficient and that the deficiency sufficiently prejudiced the defense so as to undermine judicial confidence in the outcome. See Strickland v. Washington, 466 U.S. 668, 696-97, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). In evaluating whether an attorney's conduct is deficient, "there is `a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance,' "and the defendant "bears the burden of proving that counsel's representation was unreasonable under prevailing professional norms and that the challenged action was not sound strategy." Brown v. State, 755 So.2d 616, 628 (Fla.2000) (quoting Strickland, 466 U.S. at 689, 104 S.Ct. 2052). This Court has held that defense counsel's strategic choices do not constitute deficient conduct if alternative courses of action have been considered and rejected. See Shere v. State, 742 So.2d 215, 220 (Fla.1999). Moreover, "[t]o establish prejudice [a defendant] `must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome.'" Williams v. Taylor, 529 U.S. 362, 391, 120 S.Ct. 1495, 146 L.Ed.2d 389 (2000) (quoting Strickland, 466 U.S. at 694, 104 S.Ct. 2052).
The record from the guilt phase indicates that Lawrence confessed on two different occasions to law enforcement that he killed the victim Michael Finken. Two children testified to hearing the fatal beating that the victim endured, and three witnesses testified to the condition of the body immediately after the beating. Lawrence demonstrated to witness Chris Wetherbee that he (Lawrence) was in the midst of killing Finken when Wetherbee saw Lawrence remove a mop handle from Finken's throat. At the evidentiary hearing, defense counsel John Miller testified that in light of the overwhelming evidence against Lawrence, he discussed with Lawrence the trial tactic of attempting to persuade the jury to return a verdict short of first-degree murder. Miller stated that Lawrence agreed to that trial strategy despite his apathy.
In light of Lawrence's confessions and the overwhelming evidence against his client, Miller made the following remarks toward the end of his opening statement in the guilt phase:
Mr. Lawrence admitted his involvement and we'll do that today during the course of this trial. And we'll hear his words. You are going to find Mr. Lawrence guilty of something. And we made no bones about that yesterday in jury selection. But what you will find, ladies and gentlemen, is that he did not plan this or premeditate it. He killed *130 somebody in a jealous rage and it was not premeditated or first-degree murder.
After the presentation of all the evidence, Miller made the following comments in his closing argument:
But the inescapable conclusion from the evidence and what is left is that Mr. Lawrence just snapped, he lost it. As he told the police officer he drank and drank and drank. And he drank the entire day up until the time of the murder. And the more he drank the meaner, and meaner, and meaner, he got. And he simply lost it. And he simply got carried away. And he committed a crime that he is responsible for, no question about that. But he did not premeditate the crime and he did not plan the crime, he did not design the crime. And it is something that simply happened in a jealous rage.
. . . .
And for whatever reason Mrs. Lawrence put this thing in motion. And you know everybody is responsible for their own conduct, there's no question about that. We told you in opening statement that Mr. Lawrence is guilty; he's got to pay the price. He has to answer to you, and he's got to answer to the judge for what he did. He committed a crime. No doubt about that. He can't blame anybody else. But that's not what we are doing, we are not telling you "Let him go and see what they do with Brenda Lawrence later on." That's not our theory of the case. Our theory of the case is that he is guilty but that the degree of the responsibility does not rise to the legal of premeditation.
. . . .
You know, we are not defending this case on the theory that, well, he had a bad day and he got drug[ged] and therefore let him go and let him out. That is not true. And he will be found guilty of something and he has to accept the consequences of his behavior. And he has to accept the consequences of him drinking. But the point is, ladies and gentlemen, is that he was too drunk to premeditate anything. He was too drunk to plan anything. And he was too drunk to design anything.
. . . .
The evidence simply does not support premeditation. This is a man that has given a tape recorded confession and has signed a waiver of rights. He has told the truth unlike Chris Wetherbee. He has told the truth. To find that there is premeditation or for the State to suggest there is premeditation ignores the evidence in this case and it ignores the law that the Court is going to give you at the end of this case. We would ask that you pay careful attention to the Court's instructions and that you apply those instructions and you apply the law to the facts of this case. And we told you that you will find Mr. Lawrence guilty of something, and we never disputed that. But that something should not be first-degree premeditated murder. That something should either be second-degree murder or manslaughter.
Miller did not concede first-degree premeditated murder during the guilt phase of the trial, but rather, the record supports that Miller set upon a strategy to do what he reasoned he could do to convince the jury to find Lawrence guilty of a lesser offense. See Atwater v. State, 788 So.2d 223, 230 (Fla.2001) ("Sometimes concession of guilt to some of the prosecutor's claims is good trial strategy and within defense counsel's discretion in order to gain credibility and acceptance of the jury."). Faced with the overwhelmingly inculpatory evidence of the confessions and the eyewitness testimony of the children *131 and Chris Wetherbee, Miller made an informed decision to argue for a lesser conviction in an effort to avoid a first-degree premeditated murder conviction and the possible imposition of the death penalty. See Brown v. State, 755 So.2d 616, 629-30 (Fla.2000). Furthermore, there was no due process requirement that the trial court conduct an on-the-record inquiry as to whether Lawrence agreed with Miller's trial strategy to concede guilt to a lesser included offense. See Geddis v. State, 715 So.2d 991, 992 (Fla. 4th DCA 1998).
The record demonstrates that Miller repeatedly informed Lawrence of his strategy and concluded that he agreed with the strategic approach. As to trial strategy, Miller testified that Lawrence was cooperative even though he appeared apathetic. Lawrence could not recall any details relative to his discussions with Miller at the evidentiary hearing, but he testified that "not to his knowledge" did he consent to Miller's trial strategy to concede guilt to a lesser included offense. Lawrence failed to demonstrate that Miller's tactical decision to argue for a conviction on a lesser included charge constituted ineffective assistance of counsel under either prong of Strickland in his postconviction motion or on appeal. See Harris v. State, 768 So.2d 1179 (Fla. 4th DCA 2000).
Lawrence also contends that Miller rendered ineffective assistance during the penalty phase when he conceded guilt by making the following statement toward the end of his closing argument: "We have never at any time in this case disputed Gary Lawrence's guilt...." Lawrence's contention is without merit. Miller's statement was made in the context of arguing that Lawrence should not be sentenced to death. Overall, it appears from the record that Miller provided full representation to Lawrence and made reasonable, informed tactical decisions as to his defense.
We conclude that the trial court properly found that Miller's concessions of guilt of a lesser crime during the guilt phase and argument relative to his guilt during the penalty phase were reasonable and informed tactical decisions. See McNeal v. Wainwright, 722 F.2d 674, 676 (11th Cir. 1984) ("In view of the overwhelming evidence against McNeal, including a tape recording of his confession to the shooting, the strategy of trial counsel was proper and would not amount to a constitutional violation."). Therefore, we affirm the trial court's denial of this claim.
In his third claim on appeal, Lawrence argues that the trial court erred in denying his ineffective assistance of counsel claim where defense counsel failed to inform Lawrence of his right to testify and to obtain an on-the-record waiver of that right. We disagree.
The record of the evidentiary hearing demonstrates that Lawrence could recall very little regarding his discussions with Miller relative to testifying at trial. However, Miller testified at the hearing that they discussed this issue at length, but Lawrence told him, "I'm not testifying, period. You're going to have to do the best you can. And however this comes out, we'll have to get the best result we can."
After the hearing, the trial court denied Lawrence's claim and made the following findings:
The Defendant alleges that counsel failed to advise the Defendant of his right to testify at trial and, thus, the jury was unaware of the extent of his drug and alcohol abuse at the time of the offense and throughout his life. Further, on account of the Defendant's diminished mental ability, due process requires an on record determination that *132 the Defendant voluntarily and intelligently waived his right to testify.
Similar to his testimony regarding trial strategy discussions, the Defendant testified at the evidentiary hearing that he could not recall any discussions where counsel advised him on his right to testify. (Evidentiary Hr's Tr. at 17). On the other hand, Mr. Miller testified that he had lengthy discussions with the Defendant concerning whether he should testify and the Defendant told him "point blank he was not going to testify in either the guilt phase or the penalty phase." (Evidentiary Hr'g Tr. at 39, 44-45). Counsel said that the Defendant agreed with his position that the Defendant should not testify in the guilt phase due to the potential information that might be revealed on cross-examination. (Evidentiary Hr'g Tr. at 36-39). As to the penalty phase, counsel encouraged the Defendant to testify but he refused. (Evidentiary Hr'g Tr. at 44-47). Based on Mr. Miller's testimony, the Court finds that trial counsel advised the Defendant of his right to testify and the Defendant personally made the choice not to testify.
In addition, the Defendant erroneously contends that counsel should have obtained the waiver of his right to testify on-the-record to ensure that the waiver was knowing and intelligent. However, due process does not require that the Defendant waive his right to testify on-the-record. See Torres-Arboledo v. State, 524 So.2d 403, 410-411 (Fla.1988). See also Carmichael v. State, 715 So.2d 247, 255 (Fla.1998) (Pariente, J., concurring in result only). Therefore, the Defendant has failed to demonstrate either a deficient performance by counsel or the probability of a different outcome based on counsel's actions.
The record of the evidentiary hearing supports the trial judge's findings. Lawrence contends that this Court should adopt a rule requiring a record waiver of the right to testify. As he acknowledges, this Court has considered and rejected this claim. See Occhicone v. State, 570 So.2d 902 (Fla.1990); State v. Singletary, 549 So.2d 996 (Fla.1989); Torres-Arboledo v. State, 524 So.2d 403, 410-11 (Fla.1988). Therefore, we affirm the trial court's denial of this ineffective assistance of counsel claim.
Lawrence next asserts in his fourth claim on appeal that the trial court erred in summarily denying his ineffective assistance claim relative to defense counsel's failure to object to the prosecutor's comments on his right to remain silent. Specifically, Lawrence asserts that counsel was ineffective for failing to object or move for a mistrial (1) when the prosecutor in the penalty phase of the trial allegedly sought to shift the burden of proof by arguing that all the State needed to prove the "under sentence of imprisonment" aggravator was a statement from witness Coleen Poole; and (2) when the prosecutor repeatedly remarked that the evidence was "uncontroverted" during his closing argument in the guilt phase. Lawrence asserts that this was an impermissible comment on his right to remain silent.
This Court has set forth the standard of review relative to postconviction evidentiary hearings:
Under rule 3.850, a postconviction defendant is entitled to an evidentiary hearing unless the motion and record conclusively show that the defendant is entitled to no relief. A "movant is entitled to an evidentiary hearing on a claim of ineffective assistance of counsel if he alleges specific `facts which are not conclusively rebutted by the record and which demonstrate a deficiency in performance *133 that prejudiced the defendant.'" Upon review of a trial's court summary denial of postconviction relief without an evidentiary hearing, this Court must accept a defendant's factual allegations as true to the extent they are not refuted by the record.
Floyd v. State, 808 So.2d 175, 182 (Fla. 2002) (citations omitted).
In his first subclaim, Lawrence complains, in a single sentence, that the prosecutor engaged in improper burden shifting when he argued that the State needed only one witness's testimony to establish the "under sentence of imprisonment" aggravator. This subclaim is insufficiently briefed for this Court to review. As stated in Shere v. State, 742 So.2d 215, 217 n. 6 (Fla.1999):
In a heading in his brief, Shere asserts that the trial court erred by summarily denying nineteen of the twenty-three claims raised in his 3.850 motion. However, for most of these claims, Shere did not present any argument or allege on what grounds the trial court erred in denying these claims. We find that these claims are insufficiently presented for review.
Moreover, "[t]he purpose of an appellate brief is to present arguments in support of the points on appeal." Duest v. Dugger, 555 So.2d 849, 852 (Fla.1990). Because Lawrence's bare claim is unsupported by argument, this Court affirms the trial court's summary denial of this subclaim. See Teffeteller v. Dugger, 734 So.2d 1009, 1020 (Fla.1999); Coolen v. State, 696 So.2d 738, 742 n. 2 (Fla.1997).
In his second subclaim, Lawrence contends that defense counsel rendered ineffective assistance when he failed to object to the prosecutor's repeated use of the word "uncontroverted" in describing the nature of certain evidence presented at trial. Lawrence argues that the defense should have objected to the comments as a comment on his right to remain silent. After thoroughly reviewing the prosecutor's remarks, we conclude that this claim is unfounded and the complained-of remarks were not comments on Lawrence's right not to testify. We therefore affirm the trial court's denial of the claim without an evidentiary hearing.
In his fifth claim on appeal, Lawrence asserts that his trial counsel rendered ineffective assistance when he failed to request co-counsel to assist him. This claim was insufficiently pled. See Kennedy v. State, 547 So.2d 912, 913 (Fla.1989) ("A defendant may not simply file a motion for postconviction relief containing conclusory allegations that his or her trial counsel was ineffective and then expect to receive an evidentiary hearing."). Lawrence also failed to show in his amended motion for postconviction relief and on appeal how defense counsel's overall performance was deficient. See Strickland, 466 U.S. at 687, 104 S.Ct. 2052. On the contrary, the record demonstrated that Lawrence's counsel acted as a reasonable advocate. Furthermore, Lawrence failed to show how an additional defense attorney could have changed the outcome of the trial. See Trease v. State, 768 So.2d 1050, 1053 (Fla. 2000) ("The appointment of multiple counsel to represent an indigent defendant is within the discretion of the trial court judge, and is based on a determination of the complexity of the case and the attorney's effectiveness therein."). Thus, we affirm the trial court's summary denial of this claim.
In his final claim, Lawrence contends that his trial counsel rendered ineffective assistance for failing to object to the jury instruction given on the "under sentence of imprisonment" aggravator because the jury was not informed that he was on conditional release. The record conclusively *134 refutes this claim because Lawrence's parole supervisor testified before the jury that Lawrence was on conditional release on the day of the murder.[5] Moreover, the State admitted into evidence the certified copy of Lawrence's signed conditional release form. Thus, the jury was informed that Lawrence was on conditional release and trial counsel was not ineffective for failing to object to the jury instruction. We therefore affirm the trial court's denial of Lawrence's amended motion for postconviction relief pursuant to rule 3.850 of the Florida Rules of Criminal Procedure.

HABEAS CORPUS
Lawrence raised thirteen claims of ineffective assistance of appellate counsel in his petition for writ of habeas corpus. The requirements for establishing a claim based on ineffective assistance of appellate counsel parallel the standards announced in Strickland v. Washington, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). "[The] [p]etitioner must show (1) specific errors or omissions which show that appellate counsel's performance deviated from the norm or fell outside the range of professionally acceptable performance; and (2) the deficiency of that performance compromised the appellate process to such a degree as to undermine confidence in the fairness and correctness of the appellate result." Wilson v. Wainwright, 474 So.2d 1162, 1163 (Fla.1985); see also Freeman v. State, 761 So.2d 1055, 1069 (Fla.2000); Suarez v. Dugger, 527 So.2d 190 (Fla.1988). Counsel cannot ordinarily be considered ineffective under this standard for failing to raise issues that are procedurally barred because they were not properly raised during the trial court proceedings. See Rutherford v. Moore, 774 So.2d 637 (Fla.2000). Moreover, appellate counsel cannot be deemed ineffective for failing to raise nonmeritorious claims on appeal. Id.
However, an exception may be made where appellate counsel fails to raise a claim which, although not preserved at trial, presents a fundamental error. See Roberts v. State, 568 So.2d 1255, 1261 (Fla. 1990). A fundamental error is defined as an error that "reach[es] down into the validity of the trial itself to the extent that a verdict of guilty could not have been obtained without the assistance of the alleged error." Kilgore v. State, 688 So.2d 895, 898 (Fla.1997) (quoting State v. Delva, 575 So.2d 643, 644-45 (Fla.1991)).
In his first habeas claim, Lawrence contends that his appellate counsel was ineffective for not raising and arguing on direct appeal the issue that his defense counsel was inadequately prepared for his first death penalty case and should have been assisted by co-counsel. Trial counsel below did not file a motion for appointment of co-counsel, and he did not object to not being provided co-counsel. Because there was no motion filed or objection below, appellate counsel cannot be deemed ineffective for not raising this unpreserved issue on direct appeal. See Rutherford v. Moore, 774 So.2d 637, 648 (Fla.2000) ("[A]ppellate counsel cannot be considered ineffective for failing to raise issues which [were] procedurally barred ... because they were not properly raised at trial."). Lawrence also states that the lack of co-counsel is fundamental error. The record on direct appeal and from the evidentiary hearing shows that Lawrence's trial counsel, John Miller, was a zealous, competent advocate for his client. Thus, we fail to see how the lack of co-counsel "reached down into the validity of the trial itself to the extent that a verdict of guilty could not *135 have been obtained without the assistance of the alleged error." Kilgore v. State, 688 So.2d at 898. Moreover, this Court has held that the appointment of co-counsel is at the trial court's discretion and absent abuse will be upheld. See Trease, 768 So.2d at 1053.
Lawrence argues in his second claim that appellate counsel was ineffective for failing to raise as fundamental error his trial counsel's concession of guilt in his closing argument in the penalty phase. As the trial court properly found, defense counsel's concession of guilt was reasonable trial strategy in which counsel did nothing but acknowledge that the jury had found Lawrence guilty of the crime charged. Moreover, Lawrence cites no case law in support of his argument that his defense counsel's acknowledgment of guilt after the jury found him guilty of first-degree premeditated murder constituted fundamental error that would have resulted in reversal had appellate counsel raised this issue on direct appeal. See Rutherford v. Moore, 774 So.2d 637, 646 (Fla.2000). Furthermore, Lawrence failed to demonstrate that any deficiency in appellate counsel's performance compromised the appellate process to such an extent as to undermine confidence in the correctness of the result. Id. at 647. Thus, this claim does not form a basis for habeas relief.
In his third claim, Lawrence asserts that appellate counsel was ineffective for failing to raise on direct appeal the issue of his trial counsel's failure to move for a mistrial relative to hearsay evidence offered to support a robbery theory of felony murder. In the trial below, defense counsel objected to witness Evan Adams' hearsay testimony. The trial court overruled this objection, but defense counsel was ultimately successful in moving for judgment of acquittal on the robbery charge. Moreover, the trial court told the jury before closing arguments that the robbery and felony murder charges would not be submitted for its consideration. Thus, appellate counsel cannot be deemed ineffective for failing to raise a meritless claim. See Kokal v. Dugger, 718 So.2d 138, 142 (Fla.1998) ("Appellate counsel cannot be faulted for failing to raise a nonmeritorious claim."). Lawrence's ninth claim is also meritless for the same reasons.
In his fourth claim, Lawrence contends that appellate counsel was ineffective for failing to raise on appeal "two pertinent trial errors" which defense counsel argued in his motion for a new trial. We find this claim to be without merit. Lawrence failed in his amended petition for writ of habeas corpus to argue what two trial errors appellate counsel failed to raise on direct appeal. Even though he attempted to incorporate the argument of these two trial errors by reference to the table of contents of his initial brief from his direct appeal, Lawrence nevertheless failed to demonstrate any deficiency in appellate counsel's performance relative to these trial errors and how such alleged deficiency compromised the appellate process. See Rutherford, 774 So.2d at 646-47. Lawrence is therefore not entitled to habeas relief on this claim.
Lawrence contends in his fifth habeas claim that appellate counsel was ineffective for failing to argue as fundamental error the prosecutor's repeated use of the word "uncontroverted" during closing argument on the basis that the prosecutor impermissibly commented on his failure to testify and shifted the burden of proof. This issue is meritless because none of the prosecutor's remarks were a comment on Lawrence's right to remain silent. Therefore, we deny this habeas claim because appellate counsel cannot be faulted for failing to raise a nonmeritorious issue. See, e.g., *136 Teffeteller, 734 So.2d at 1027 (concluding that appellate counsel cannot be deemed ineffective for failing to brief a meritless claim); Kokal v. Dugger, 718 So.2d at 142.
Lawrence contends in his sixth claim that appellate counsel was ineffective for failing to argue on direct appeal that the trial court failed to grant a mistrial regarding a defense witness's testimony that he had known Lawrence since "he [defendant] got out of prison." This answer was in response to defense counsel's question of how long the witness had known the defendant. The trial court instructed the jury to disregard the statement, directed the witness not to refer to Lawrence's having been in prison, and denied the motion for mistrial. Appellate counsel was not ineffective in failing to raise this issue on direct appeal for it is highly doubtful that a trial court would have granted a mistrial in this instance in light of the brevity of the witness's answer and the trial court's curative instruction. See Keen v. State, 775 So.2d 263, 276-277 (Fla.2000) (concluding that witness's brief answer did not warrant the severe remedy of a mistrial).
Lawrence argues in his seventh claim that appellate counsel was ineffective for failing to argue on direct appeal the disparity of his codefendant's sentence. Appellate counsel raised this argument in his initial brief on direct appeal, and this Court addressed and rejected this argument. See Lawrence v. State, 698 So.2d 1219, 1222 (Fla.1997). Thus, this issue is procedurally barred. See Teffeteller, 734 So.2d at 1025.
In his eighth claim, Lawrence asserts that appellate counsel was ineffective for failing to argue as fundamental error that there was insufficient evidence to support the "under sentence of imprisonment" aggravator. We disagree.
The record reflects that immediately before the penalty phase the trial judge and counsel reviewed the jury instructions, including instructions applicable to each aggravator that the State intended to prove. During the penalty phase, the State admitted into evidence a certified copy of Lawrence's signed conditional release form and presented testimony of Lawrence's parole supervisor who stated that Lawrence was on conditional release on the day of the murder.
This Court has held that evidence of a defendant on conditional release at the time of the murder is sufficient to satisfy the "under sentence of imprisonment" aggravator. See Haliburton v. State, 561 So.2d 248 (Fla.1990). Thus, there was sufficient evidence to support the giving of the jury instruction, and we therefore conclude that appellate counsel did not render ineffective assistance for failing to raise this meritless issue as fundamental error. See generally Rutherford, 774 So.2d at 644.
Lawrence contends in his tenth claim that this Court "failed to conduct a meaningful harmless error analysis" of the HAC and CCP jury instructions because those instructions were unconstitutionally vague and overbroad and argues that appellate counsel was ineffective for not raising this issue on direct appeal. Defense counsel objected to the factual applicability of the HAC and CCP aggravators, but he did not make any objections regarding the constitutionality of the aggravators. Thus, this issue was not properly preserved for appellate review. See Geralds v. State, 674 So.2d 96, 98 (Fla.1996) (holding that defendant's issue regarding the constitutionality of two jury instructions was not preserved because defendant failed to object with specificity in the trial court below). Thus, appellate counsel cannot be deemed ineffective for failing to argue this unpreserved issue. See Teffeteller, 734 So.2d at 1026.
*137 In his eleventh claim, Lawrence contends that appellate counsel rendered ineffective assistance for failing to assert as fundamental error the trial court's improper jury instruction relative to the "under sentence of imprisonment" aggravator. We disagree.
"Issues pertaining to jury instructions are not preserved for appellate review unless a specific objection has been voiced at trial," Overton v. State, 801 So.2d 877, 901 (Fla.2001), and absent an objection at trial, can be raised on appeal only if fundamental error occurred. Fundamental error is defined as the type of error which "reaches down into the validity of the trial itself to the extent that a verdict of guilty could not have been obtained without the assistance of the alleged error." Urbin v. State, 714 So.2d 411, 418 n. 8 (Fla.1998) (quoting Kilgore v. State, 688 So.2d 895, 898 (Fla.1996)).
The record indicates that Lawrence objected to the portion of the jury instruction that mentioned community control, and the trial court deleted that portion when it instructed the jury relative to the "under sentence of imprisonment" aggravator. Lawrence did not make any further objections during conference regarding this aggravator, and he failed to timely object when the trial court finally read the instruction to the jury. See Watson v. State, 651 So.2d 1159, 1164 (Fla.1994) (finding issue regarding jury instruction not preserved where defendant failed to object after the judge instructed the jury and failed to submit a specific jury instruction which was denied by the trial court). Appellate counsel's failure to raise this unpreserved issue, which does not constitute fundamental error, does not present a deficiency in appellate counsel's performance pursuant to Strickland. See Bertolotti v. Dugger, 514 So.2d 1095 (Fla.1987); Darden v. State, 475 So.2d 214 (Fla.1985).
Lawrence asserts in his twelfth claim that the jurors' sense of responsibility was unconstitutionally diluted and appellate counsel was ineffective for not raising this issue as fundamental error. Lawrence failed to demonstrate in his petition for writ of habeas corpus that his appellate counsel's performance was deficient and how the alleged deficiency prejudiced him. See Rutherford, 774 So.2d at 646-47; Teffeteller, 734 So.2d at 1023.
In his last claim, Lawrence argues that "the ineffective assistance of appellate counsel claims were of such magnitude as to constitute a serious or substantial deficiency." However, he has failed to show any instance of appellate ineffectiveness that, singly or cumulatively, warrants relief. See Thompson v. State, 759 So.2d 650, 668 n. 13 (Fla.2000).
Accordingly, we affirm the lower court's denial of Lawrence's amended motion for postconviction relief and deny the amended petition for writ of habeas corpus.
It is so ordered.
ANSTEAD, C.J., SHAW, WELLS, PARIENTE, and LEWIS, JJ., and HARDING, Senior Justice, concur.
QUINCE, J., concurs in result only.
NOTES
[1] Lawrence alleged the following claims: (1) ineffective assistance of counsel; (2) denial of the right to an impartial jurydue process violation; (3) improper reference to prior prison record during guilt phasedue process violation; (4) lack of sentencing proportionality between codefendants; (5) improper aggravator evidence regarding under a sentence of imprisonment; (6) improper admission of hearsay evidence relative to a wire transfer; (7) noncompliance with public records requests; (8) noncompliance with judicial records requests; (9) erroneous jury instructions pertaining to expert testimony; (10) improper jury instructions on aggravators; (11) inadequate appellate review by the Florida Supreme Court pertaining to erroneous jury instructions on the HAC and CCP aggravators; (12) improper jury instruction regarding the under sentence of imprisonment aggravator; (13) incorrect jury instruction on the advisory role of jury; (14) death penalty is unconstitutional.
[2] Lawrence alleged the following claims of ineffective assistance of counsel: (a) concession of guilt to lesser included offenses during the guilt phase of the trial without Lawrence's consent and concession of guilt to first-degree murder during the penalty phase without Lawrence's consent; (b) inadequate presentation of Lawrence's mental deficiencies and use of intoxicants; (c) failure to advise Lawrence of his right to testify; (d) failure to introduce evidence of fetal alcohol syndrome; (e) failure to utilize adequate expert testimony; (f) failure to object to or preclude evidence of the robbery charge; (g) failure to present adequate evidence of extreme emotional disturbance; (h) failure to move for a mistrial during the State's argument in the penalty phase on the ground that it sought to shift the burden of proof as to the defense of intoxication and mental impairment; (k) no assistance by an additional defense attorney; (1) failure to move for mistrial after presentation of hearsay evidence offered to support a robbery theory of felony murder; (m) failure to object or move for mistrial on previously raised issues; (n) ineffective assistance of appellate counsel; (o) failure to object to the State's comments during closing argument that evidence was uncontroverted; and (p) waiver of search and seizure issues for appellate review.
[3] Huff v. State, 622 So.2d 982 (Fla. 1993).
[4] The thirteen claims are: (1) appellate counsel was ineffective for not being adequately prepared to try a capital case and for not requesting counsel to assist; (2) appellate counsel was ineffective for failing to argue trial counsel's concession of guilt in his closing argument in the penalty phase; (3) appellate counsel was ineffective for failing to raise the issue of trial counsel's failure to move for a mistrial relative to hearsay evidence offered to support a robbery theory of felony murder; (4) appellate counsel was ineffective for failing to argue two pertinent trial errors mentioned in defense counsel's motion for new trial; (5) appellate counsel was ineffective for failing to argue that the prosecutor's use of the word "uncontroverted" in describing evidence against Lawrence was improper argument and an attempt to shift the burden of proof; (6) appellate counsel was ineffective for failing to argue that the trial court erred in denying Lawrence's motion for mistrial when a defense witness testified that he had known Lawrence since "he [defendant] got out of prison"; (7) appellate counsel was ineffective for not raising the issue of the disparity of his codefendant's sentence, which was life imprisonment; (8) appellate counsel was ineffective for failing to argue that the trial court should have given a limited jury instruction regarding the under sentence of imprisonment aggravator in light of the fact that he was on conditional release; (9) the trial court erred in admitting hearsay evidence that went to the robbery/felony murder issue and that appellate counsel was ineffective for failing to raise this issue; (10) appellate counsel was ineffective for not raising the issue that this Court failed to conduct a meaningful harmless error analysis of the HAC and CCP jury instructions because those instructions were unconstitutionally vague and overbroad; (11) appellate counsel was ineffective for not raising the issue that trial counsel was ineffective for not objecting to the jury instruction on the under sentence of imprisonment aggravator; (12) the jurors' sense of responsibility was unconstitutionally diluted and appellate counsel was ineffective for not raising this issue as fundamental error; and (13) cumulative errors by appellate counsel.
[5] See Haliburton v. State, 561 So.2d 248 (Fla. 1990).